TOWER & SONS ET AL. *v.* UNITED STATES (No. 2111).[1]

1. RELATIVE SPECIFICITY—CIDER—FRUIT JUICE OR FRUIT SIRUP.

With regard to merchandise responding to the call of paragraph 202, tariff act of 1913, "cider," and also to that of paragraph 247, "other fruit juices

---

[1] T. D. 38948.

and fruit sirup, not specially provided for," it can hardly be doubted that the eo nomine designation of paragraph 202 would prevail over the descriptive one of 247 as being the more specific.

2. COMMERCIAL DESIGNATION.

In the tariff act the commercial designation prevails over the common one.

3. EVIDENCE OF COMMERCIAL DESIGNATION.

A commercial meaning, in order to prevail over a common one in the tariff act, must be shown to be "definite, uniform, and general, and not partial, local, and personal."

4. GOODS MANUFACTURED TO MEET TARIFF PROVISIONS.

The law has not resented bona fide efforts of manufacturers to so fashion their goods that they will be assessed a lower, rather than a higher rate of duty.

5. BOILED CIDER.

Apple juice, which has been reduced to about one-fifth of its bulk and the consistency of thin maple syrup, shown to be known commercially as "boiled cider," is dutiable as "cider," under paragraph 202, tariff act of 1913, rather than fruit juice or fruit sirup, under paragraph 247.

United States Court of Customs Appeals, November 21, 1921.

APPEAL from Board of United States General Appraisers, G. A. 8439 (T. D. 38725).

[Reversed.]

*Barnes, Chilvers & Halstead* (*Frank M. Halstead* of counsel) for appellants.
*William W. Hoppin*, Assistant Attorney General (*John J. Mulvaney* and *Marcus Higginbotham, jr.*, special attorneys, of counsel), for the United States.

[Oral argument Oct. 25, 1921, by Mr. Halstead and Mr. Mulvaney.]

Before DE VRIES, Presiding Judge, and SMITH, BARBER, and MARTIN, Associate Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise now in question was invoiced as "boiled cider," and was described by the appraiser as "boiled cider (concentrated apple juice) of the consistency of sirup."

The collector classified it for duty as a fruit juice or fruit sirup under paragraph 247 of the tariff act of 1913. The paragraph reads as follows:

247. Cherry juice and prune juice, or prune wine, and other fruit juices, and fruit sirup, not specially provided for in this section, containing no alcohol or not more than 18 per centum of alcohol, 70 cents per gallon; if containing more than 18 per centum of alcohol, 70 cents per gallon and in addition thereto $2.07 per proof gallon on the alcohol contained therein.

The importers protested, claiming an assessment of the article as cider under the eo nomine provision of paragraph 202 of the act, which reads as follows:

202. Cider, 2 cents per gallon.

The protest was submitted to the Board of General Appraisers and was overruled. The importers have appealed from that decision.

It seems to be conceded that the importation is dutiable either as cider under the latter provision above copied or as fruit juice or fruit sirup under the former one. And in case it be found that the article responds to both enumerations, it can hardly be doubted that the eo nomine provision for cider should prevail over the descriptive one for fruit juice or fruit sirup.

The principle is well established that in determining the classification of goods an eo nomine designation must, unless a legislative intent to the contrary is clearly indicated, be preferred to terms of general description and to enumerations which are broader in scope and less specific.—SMITH, J., in Brown & Co. *v.* United States (6 Ct. Cust. Appls., 415; T. D. 35977).

The issue, therefore, is reduced to a single question, to wit, whether the present article is included within the enumeration of " cider " in paragraph 202, supra.

The importation consists of apple juice, which has been boiled down to about one-fifth of its original volume, having now a consistency like thin maple sirup, containing no foreign ingredient, and having suffered no chemical change whatever, except possibly a negligible alteration of its sugar content, such as is unavoidable in the operation. Its present consistency prevents its use as a beverage, but it may be restored to that use by simply adding water to it, and that is one of the recognized and considerable uses of the importation in domestic trade. The article is largely used in the manufacture of apple butter and to some extent for culinary purposes. It contains in concentrated form all of the elements and qualities of raw cider, except that it will not naturally ferment. Whether it would naturally become vinegar if diluted does not appear from the record.

The contention of the importers before the board was twofold: First, that for many years next preceding the enactment of the foregoing provisions, cider was definitely, uniformly, and generally known in the commerce of this country, according to its condition, as sweet cider, hard cider, boiled cider, etc., and that the present article was thus commercially designated as one kind of cider, namely, boiled cider; and, secondly, that by reason of its characteristics the present article responds in fact to the enumeration of cider as commonly understood in this country.

The board overruled both branches of the importers' contention, discussing the latter at some length, but dismissing the former with the following observation only:

The fact that it is designated boiled cider, thus retaining the original name, in no way convinces us that it should be classified as cider. It should be considered as though it had been imported under a name entirely different and in no way suggesting its origin.

In this conclusion we think that the board erred, for if the importation had received a commercial designation in this country as a kind of cider, and if that fact sufficiently appeared from the testimony, we think that such a designation should control the assessment of the article, since the enumeration of cider in paragraph 202, supra, contains no terms of limitation.

The authoritative rule upon this subject is laid down by the Supreme Court in the case of Hedden v. Richard (149 U. S., 346, 348) in these words:

> With regard to the language of commerce, the general rule laid down by this court is that it must be construed, when used in laws imposing duties on importations of goods, and particularly when employed in the denomination of articles, according to the commercial understanding of the terms used.— United States v. One hundred and twelve casks of sugar (8 Pet., 277) ; Elliott v. Swartwout (10 Pet., 137). While it is true that "language will be presumed to have the same meaning in commerce that it has in ordinary use, unless the contrary is shown " (Swan v. Arthur, 103 U. S., 597, 598), yet " the commercial designation of an article among traders and importers, where such designation is clearly established, fixes its character for the purpose of the tariff laws; * * * a specific designation eo nomine must prevail over general terms, and a commercial designation is the standard by which the dutiable character of the article is fixed."—Arthur v. Lahey (96 U. S., 112, 113, 114). This rule is equally applicable where a term is confined in its meaning, not merely to commerce, but to a particular trade, and in such case also the presumption is that the term was used in its trade signification.

In Maddock v. Magone (152 U. S., 368, 371) the proof necessary to establish such a commercial designation is defined as follows:

> Necessarily the commercial designation is the result of established usage in commerce and trade, and such usage, to affect a general enactment, must be definite, uniform, and general, and not partial, local, or personal.

In the present case the importers undertook to prove a commercial designation of the importation as a kind of cider, to wit, boiled cider. In support of that claim, witness Glen M. Oyer testified as follows:

Q. How is this merchandise known and designated in trade?—A. Boiled cider.

　　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

Q. Now, state whether or not on and immediately prior to October 3, 1913, there was a recognized article of trade and commerce known as boiled cider?— A. There was.

Q. Was the designation boiled cider generally and uniformly used prior to that time?—A. Yes, sir.

Q. State whether or not the merchandise in question would be included or excluded from the commercial designation of boiled cider?—A. It would be boiled cider.

Q. It would be included?—A. Yes, sir.

　　*　　　　*　　　　*　　　　*　　　　*　　　　*　　　　*

Q. Mr. Oyer, is not cider commonly known as sweet cider, as hard cider, or as boiled cider, as the case may be?—A. Yes, sir.

Q. And the cider that is the first product after the apples are pressed, how is that usually known?—A. As sweet cider.

Upon the same subject witness J. M. Smucker testified as follows:

Q. Mr. Smucker, how is this merchandise represented by the Exhibits 1 and 3 designated?—A. You mean by name?

Q. Yes.—A. As boiled cider.

Q. Is there an article of commerce known to the trade as boiled cider?—A. Yes.

Q. How long has such article been so known?—A. I don't know. Ever since I was a little boy.

Q. How long in your experience?—A. Well, I have never known it by any other name than cider.

Judge WAITE. You may not have known it very long. The question was how many years.

Q. How many years have you known it in trade and commerce?—A. It is always known as boiled cider.

Judge WAITE. That is, since the world began?

WITNESS. As far as I know.

Judge WAITE. I am trying to find out how far you know.

WITNESS. Well, I am 60 years old.

Judge WAITE. Then I suppose when you were a year old you knew about it?

WITNESS. Practically, yes.

Q. Has it been so known ever since you knew it in business?—A. Yes, sir.

Q. But immediately prior to October 3, 1913, was there a well-known definite trade designation of merchandise as boiled cider?—A. There was.

Q. Would the merchandise here in question be included or excluded in that trade designation?—A. How is that?

Q. Would the merchandise here in question be included in the trade designation of boiled cider or excluded therefrom by the custom of the trade?—A. I think it would be designated as boiled cider.

Q. Boiled cider?—A. Yes, sir.

Q. How do you sell this merchandise? Do you sell the merchandise in its condition as imported in the trade of the United States?—A. Yes, sir.

Q. How do you sell it?—A. As boiled cider.

Q. Do you sell it in bottles?—A. We sell it in cans.

Q. Do you label your cans?—A. Yes, sir.

Q. Have you any of the labels?—A. [Witness produces them.]

\*       \*       \*       \*       \*       \*       \*

Q. In the purchase of cider do you or do you not in the trade usage specify what kind of cider?—A. Yes, we just specify what kind of cider.

Q. Now, for what purpose is cider used other than as a beverage?—A. Well, we use it in the manufacture of apple butter. It is also used in the manufacture of mincemeat.

\*       \*       \*       \*       \*       \*       \*

Q. All right. Suppose in 1912 I had sent you an order for five barrels of cider, what would you have sent?—A. Well, I would have answered you to designate what you wanted, whether you wanted the raw or boiled.

Q. Suppose the order merely stated please send me five barrels of cider?—A. We could not have taken care of it until we would have known what you wanted.

By Judge WAITE:

Q. Were you making cider then?—A. Yes; we were making it in a custom way.

Q. I mean cider from the apple, with a press, fresh cider?—A. Yes, sir.

Q. You say if a man had sent you an order, knowing you were making fresh cider, send us five barrels of cider, you would not have billed the order until you knew whether he wanted fresh cider or boiled cider?—A. Not until we knew what he wanted.

The foregoing witnesses were and long had been engaged in trade in this country, dealing in this and similar products, and their testimony stands uncontradicted in the record. We think that it is sufficient when unrefuted to establish a commercial designation of the present article as a kind of cider, according to the nomenclature of the trade of this country.

This conclusion is furthermore sustained by the fact that the article has no trade name except boiled cider; and that the present importation was ordered and invoiced under that name; also that the labels for the retail containers of the commodity describe it as boiled cider; and that the appraiser officially reported the importation to be boiled cider. It is true that he followed this name with the descriptive words "(concentrated apple juice) of the consistency of sirup," but it is not claimed that the article ever bears the name of apple juice or apple sirup, or in fact any other name than boiled cider, in the commerce of this country.

In this point of view the present case differs from the decisions cited by the Government, and by the board in its decision, and we do not deem it necessary to discuss them in detail.

It may be noted that the duty levied upon cider by paragraph 202, supra, is at a specific rate of 2 cents per gallon. It is argued by the Government that this rate would concededly apply to fresh cider having its original volume, and that if no higher rate were levied upon the reduced volume of boiled cider the latter article would virtually escape part of the statutory duty as compared with the former; that is to say, the ad valorem equivalent of the duty would be less. The Government contends that this consideration should weigh against the importers' claim.

It is obviously true that the appellants by importing boiled cider rather than fresh cider save in the cost of containers, in freight, cartage, storage, and according to their claim in the assessment of duties. But all of these facts were within legislative cognizance when the paragraph was enacted, and when the term "cider" was written into the provision without words of limitation it must be assumed that it was intended to include all kinds of cider notwithstanding the fact that some might be reduced in volume by means of boiling. The law has not resented the bona fide efforts of importers to limit or reduce their tariff charges by such means.—United States v. Schoverling (146 U. S., 81); Hartranft v. Weigman (121 U. S., 609; Seegerber v. Farwell (139 U. S., 611; Magone v. Lockmeyer (139 U. S., 612); Merritt v. Welsh (104 U. S., 694).

Moreover, the argument of the Government just mentioned presents a significant obverse side in the following particular, viz, the duty upon cider levied by paragraph 202, supra, is but 2 cents per gallon, whereas the rate levied upon fruit juice or fruit sirup by paragraph 247, supra, is 70 cents per gallon. It is hardly probable that Congress intended to increase the rate of duty upon cider from 2 cents a gallon to 70 cents a gallon simply because more or less of its water content had been boiled off. Furthermore, it should be observed that the fruit juice and fruit sirup which are subjected to duty at the rate of 70 cents per gallon by paragraph 247, supra, are such as may contain 18 per cent of alcohol or less, a higher rate applying in case the alcohol content should be more than 18 per cent. The paragraph thus seems to contemplate products of a different character from the boiled cider now in question.

Accordingly the decison of the board is reversed and the cause is remanded.

*Reversed.*