## CENTENNIAL FLOURING MILLS CO. ET AL. *v.* UNITED STATES (No. 4374)[1]

United States Court of Customs and Patent Appeals, March 23, 1942

*Lawrence & Tuttle* (*George R. Tuttle* and *Frank L. Lawrence* of counsel), for appellants.

*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks,* of counsel), for the United States.

[Oral argument February 3, 1942, by Mr. Tuttle and Mr. Weeks.]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, holding an importation of ground kelp dutiable at 10 per centum ad valorem under paragraph 1540 of the Tariff Act of 1930 as seaweeds, manufactured, as assessed by the collector at the port of Seattle, Wash., rather than free of duty under the *eo nomine* provision for kelp contained in paragraph 1705 of that act as claimed by the importers (appellants).

The paragraphs in question read:

PAR. 1540. Moss and sea grass, eelgrass, and seaweeds, if manufactured or dyed, 10 per centum ad valorem.

PAR. 1705. [Free list.] Kelp.

---

[1] C. A. D. 200.

The trial court, after quoting the following definitions of the term "kelp":

*Webster's New International Dictionary, 2nd ed.:*

1. The ashes of seaweed, formerly a source of soda, now used chiefly as a source of iodine.

2. A mass or growth of large seaweeds, esp. those burned for the ashes.

3. Any of various large brown seaweeds of the families *Laminariaceae* and *Fucaceae.*

*Funk & Wagnalls New Standard Dictionary:*

1. Seaweeds burned for the chemical salts contained in their ash; any large coarse seaweeds, as the *Laminaricaeae* [*Laminariaceae*] of the *Fucaceae.*

reviewed the evidence in the case, and held that the issues here involved are distinguishable from the issues decided by this court in the case of *Nootka Packing Co.* v. *United States,* 22 C. C. P. A. (Customs) 464, T. D. 47464 (relied upon by counsel for appellants), wherein it was held that certain minced razor clams "which," as stated in our decision, "after shelling have had the stomachs, entrails and part of the necks removed, and which have been washed, drained and put through a mincer," imported in cans, were dutiable at 35 per centum ad valorem as clams under paragraph 721 (b) of the Tariff Act of 1930 as assessed by the collector at the port of Seattle, rather than free of duty as shellfish, prepared or preserved, under paragraph 1761 of that act.

In our decision in the *Nootka Packing Co.* case, *supra,* it was pointed out that the provision for clams contained in paragraph 721 (b), there under consideration, was not restricted to clams in their raw or natural state nor "to entire clams," but included clams in any condition "so long as they are clams." The court quoted with approval the following from our decision in the case of *Smillie* v. *United States,* 11 Ct. Cust. Appls. 199, 201, T. D. 38966: "Where a dutiable provision names an article without terms of limitation all forms of the article are thereby included unless a contrary legislative intent otherwise appears," and, in support of that well-established principle, cited the case of *Tower & Sons* v. *United States,* 11 Ct. Cust. Appls. 157, 162, T. D. 38948. Then, after reviewing many cases on the subject, the court said: "The clear weight of the authorities on the subject is that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article."

Although on the trial below counsel for the Government apparently were somewhat doubtful as to whether the involved merchandise was, in fact, kelp, it was conceded by counsel at the time of the oral arguments in this court that the merchandise in question is, in fact, "kelp, ground."

It appears from the evidence in the case and also from dictionary definitions that kelp is a type of seaweed.

Appellants' witness George B. Rigg, a professor of botany at the University of Washington and a member of the staff in oceanography, testified relative to the use of kelp as follows:

Q. From your, the experience you have given us with the Bureau of Soils and your work with the university can you tell us what the uses of kelp are?—A. Why, there are a lot of uses that are made of it. One use, of course, is for fertilizer. The people everywhere along the coast here, even out of western Alaska, make use of it in their gardens for fertilizer.

Q. And are there any other uses?—A. Yes, it can be used for the manufacture of potash. It has been so used. And it was during the World War used by the Hercules Powder Co. for the manufacture of acetone, which is a solvent that is much used in laboratories in industry. And let's see, I didn't mention that it has been used a good deal for stock feed, too, in the ground form.

Charles William Walsworth, a salesman for the Centennial Flouring Mills Co. (one of the appellants), was called as a witness both by appellants and by the Government. He testified that although occasionally his company sold ground kelp, similar to that here involved, to the trade, it generally used such kelp as an ingredient in mixed dairy, poultry, hog, and dog feeds. The witness also stated that in harvesting kelp off the coast of Southern California and Catalina Island it is cut 4 to 5 feet beneath the surface of the water; that it is then taken to his company's mill and "run through hammer mills and ground up and taken from there to retards, and dried by a drying process; I think they call it a retard; and after it is ground it is put through another series of mills and ground fine, and from there it is sacked and put out for commercial use, that is, for feeds."

The witness Allan J. Elwell, a United States examiner of merchandise at the port of Seattle, testified that, although he had examined thousands of tons of merchandise like that here involved, he could not tell and did not know whether or not the merchandise he had examined, which was similar to that here involved, was kelp, and that he made an advisory classification of the involved merchandise as seaweed, manufactured.

In its decision, distinguishing the issues in the instant case from those involved in the *Nootka Packing Co.* case, *supra,* the trial court said, *inter alia:*

After a painstaking and careful consideration of all of the testimony before us it seems to the court that the compelling conclusion is that the imported merchandise is not kelp since it has completely lost its identity as such by reason of the processing to which it was subjected and has become not kelp but meal, or a seaweed meal.

Plaintiff in the brief filed in its behalf relies on the *Nootka Packing Co.* case, hereinbefore cited, and quoted from. In that case clam meat, washed, and cut into small pieces which could be readily identified as parts of clams, canned in brine, and cooked was held to be properly classifiable under the tariff provision

for "clams, packed in air-tight containers" rather than under the provision for "shellfish * * * prepared or preserved." In arriving at its conclusion the court pointed out that the clams involved were adaptable to exactly the same uses as would be whole clams and that the product could be readily identified as parts of clams. These facts distinguish the *Nootka Packing Co.* case from the present case, since, first, the meal in issue is a new product distinguished from kelp in form and use, and, second, the evidence shows that it is not readily identifiable as kelp, a laboratory or microscopic examination being necessary to determine its identity.

Then, after referring to the decision of this court in the case of of *Stone & Co.* v. *United States,* 7 Ct. Cust. Appls. 173, T. D. 36492, the trial court held that the involved ground kelp or kelp meal was properly dutiable as. seaweeds, manufactured, at 10 per centum ad valorem under paragraph 1540, *supra,* and, accordingly, overruled appellants' protest.

In the case of *Stone & Co.* v. *United States, supra,* it was held that "currants reduced to a pulp for the use of making wine" were "no longer currants as commonly understood," and were not dutiable as such under paragraph 218 of the tariff act of 1913, but were dutiable as "fruits, including berries, when dried, desiccated, evaporated, or prepared in any manner," under paragraph 217 of that act which read in part, "all edible fruits, [etc.]." In so holding, the court stated that by reducing currants to the pulp there involved their general use as currants had been limited, and that the quoted provision of paragraph 217 of that act "aptly describes that condition of berries into which this [the merchandise involved] was processed. That it was the intent of Congress to therewithin include all such fruits, berries, and materials is evinced by the inclusive word 'all.' " The court also called attention to the fact that the Congress in the quoted provision of paragraph 217 had "with much care and precision provided different rates of duties for different conditions of fruits and berries."

Under the tariff acts of 1909, 1913, 1922, and 1930, kelp has been *eo nomine* provided for free of duty without words of qualification or limitation. See paragraphs 601 (1909), 523 (1913), 1602 (1922), and 1705 (1930). Seaweeds, crude or unmanufactured and not otherwise specially provided for, were made free of duty under those acts. See paragraphs 630 (1909), 552 (1913), 1622 (1922), and 1722 (1930). Seaweeds, if manufactured or dyed, were made dutiable under those acts at 10 per centum ad valorem. See paragraphs 78 (1909), 372 (1913), 1442 (1922), and 1540 (1930). Furthermore, at the time of the enactment of the tariff acts of 1922 and 1930, the Congress was informed by the Tariff Commission that dried and ground kelp was sometimes used as a fertilizer. See Summary of Tariff Information, 1921, at page 1341, and Summary of Tariff Information, 1929, at page 2400.

It appears from the evidence of record that in addition to its use as fertilizer, ground kelp is also used as stock feed (as stated by the witness George B. Rigg), or as an ingredient in stock feeds (as stated by the witness Charles William Walsworth).

That the grinding process to which the involved merchandise was subjected is a manufacturing process, cannot be questioned. See *Stone & Co.* v. *United States, supra.* Accordingly, ground kelp is kelp, manufactured, and, as kelp is a seaweed, the involved ground kelp, unless more specifically provided for, is dutiable as seaweed, manufactured, under paragraph 1540, *supra.*

That the involved ground kelp, from which nothing has been removed and to which nothing has been added, is a form of kelp is not, and cannot be, questioned. The question presented, therefore, is whether the Congress intended that ground kelp, which it was informed at the time of the enactment of the tariff acts of 1922 and 1930 was used in the United States as a fertilizer, should be dutiable at 10 per centum ad valorem as seaweed, manufactured, under paragraph 1540, *supra*, or free of duty under the *eo nomine* provision for kelp in paragraph 1705, *supra.*

In view of the fact that seaweeds, as hereinbefore noted, both crude and manufactured, were specially provided for under the tariff acts of 1909, 1913, 1922, and 1930, and kelp, a type of seaweed, was *eo nomine* provided for without words of qualification or limitation in each of those acts, it would seem to be clear that the Congress intended to distinguish for tariff purposes between seaweeds, whether crude or manufactured, on the one hand, and kelp on the other. We are of opinion, therefore, that it was the intent of the Congress that kelp, whether crude or manufactured, so long as it remained kelp, should be free of duty under paragraph 1705, *supra*, and that the trial court erred in holding that the involved ground kelp was dutiable as seaweeds, manufactured, at 10 per centum ad valorem under paragraph 1540, *supra.*

For the reasons stated, the judgment is *reversed* and the cause *remanded* for proceedings consistent with the views herein expressed.