UNITED STATES *v.* JOHN DUNCAN'S SONS ET AL. (No. 733).[1]

TAMARINDS, PACKED IN MOLASSES.

It appears that "tamarinds" as a commercial designation has been accepted for a number of years in the administration of our tariff laws, and having been incorporated in the tariff act of 1909, it is to be inferred the interpretation so established was there adhered to.   The addition of the words "packed in molasses" will not suffice to change the classification.   The importation was entitled to free entry.

United States Court of Customs Appeals, December 6, 1911.

APPEAL from Board of United States General Appraisers, Abstract 26197 (T. D. 31788).

[Affirmed.]

*Wm. L. Wemple*, Assistant Attorney General (*Leland N. Wood* on the brief), for the United States.
*Brown & Gerry* for appellees.

Before MONTGOMERY, SMITH, BARBER, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:
This importation consisted of tamarind fruit, to which molasses had been added, imported in barrels.   It was returned for duty at 1 cent

---

[1] Reported in T. D. 32097 (21 Treas. Dec 729).

per pound and 35 per cent ad valorem under paragraph 274 of the tariff act of 1909, the relevant part of which is as follows:

\* \* \* Comfits, sweetmeats, and fruits of all kinds preserved or packed in sugar, or having sugar added thereto, or preserved or packed in molasses, spirits, or their own juices. \* \* \*

On appeal to the Board of General Appraisers the importation was admitted free under the provision of the free list, paragraph 688, as tamarinds. The Government appeals from this decision.

It is contended that this fruit is not tamarinds in its natural state, as it appears that the pod or shell has been removed. It appears, however, from the testimony of the importers' witnesses that the importation in question is the tamarinds known to commerce, and has been imported in the manner in which this was imported for many years, one of the importers' witnesses having had an experience of 30 years, and indeed none of the witnesses in the case instances the importation of tamarinds in any other condition, except small importations in its green state, which we hereinafter refer to. While the record is not very clear, the inference is strong that the sugar contents of this fruit are what give it its value for medicinal and other purposes, and this is preserved in the present importation. It is a product sold mainly to the drug trade.

A somewhat analogous question has arisen with reference to the free-list provision for shrimps and other shellfish, and it has been held that the removal of such shellfish from their shells, and even cooking and preparing them for use, does not take them out of the free list and place them under the other provisions of the tariff law. See *In re* Wyman & Co., G. A. 6503 (T. D. 27791), and *In re* protest of Doyen, G. A. 6052 (T. D. 26387).

But we think the case need not be rested on analogy. As before stated, the proof discloses that importations of tamarinds in this form have been made for many years, and that they constitute the commodity known commercially as tamarinds.

The Government introduced witnesses to show the chemical analysis of green tamarinds, and in order to meet the testimony as to commercial designation, two inspectors were examined. The first inspector called by the importer testified that the goods in question here were tamarinds. But he also testified, on cross-examination, that he had seen tamarinds in other condition, namely, fresh in the pod, and that such tamarinds had been received at the port of New York. The question of how numerous were the importations was not gone into by this witness, but the Government later called another examiner of merchandise at the port of New York and introduced evidence showing that tamarinds in the green state had been imported. He testified that they were imported in baskets and that he had had four years' experience, during which time two importations of green

tamarinds had been passed on by him. When asked in what quantity green tamarinds had been imported, he replied, "Small quantities—a couple of baskets," and further testified that a small percentage of the importation of tamarinds came green. This testimony is not sufficient to overcome the testimony of the importers' witnesses that the tamarinds, such as was introduced in this importation, is the article of commerce, and this view is strengthened by the fact that tamarinds in molasses is not a new article of commerce.

Tamarinds were mentioned in the free list in 1872 and again in 1883, apparently omitted in 1890 and 1894, but reintroduced in the free list in 1897 and continued in 1909. As early as January, 1883, the Secretary of the Treasury had submitted to him the question of whether tamarinds, which prior to being packed in barrels had a quantity of crude molasses poured over them to keep them fresh during the voyage, were classifiable under the provision for fruit preserved in molasses. The Secretary, in his statement of the case (T. D. 5552), said:

> The appraiser states, however, that the tamarinds underwent no process of preservation in the sense in which that word is usually understood when applied to preserved fruits, and that 95 per cent of the tamarinds imported prior to the time when they were placed on the free list were preserved in the same manner as those embraced in this appeal, and that they constituted then, as they do now, the tamarinds of commerce.

> Tamarinds being exempted by law from duty, and the merchandise in question being tamarinds in the condition in which usually imported, they are free under the statute.

The word "tamarinds" having been, after this declaration of the Treasury Department, introduced in the act of 1883 and again in the act of 1897 and in 1909 the presumption is very strong that it is this article of tamarinds which Congress sought to exempt. It is the tamarinds of commerce.

Cases cited in which a reduction of fruits to pulp, such as date paste or cakes of nuts, had so changed the identity of the original articles as to place them under different classifications are not of much value in determining the question here presented, for we have here strong evidence that the tamarinds of commerce are tamarinds imported, as were those in the present case. The general rule that an *eo nomine* designation is controlling as against a mere genera provision is recognized. But it is claimed on the authority of Brennan v. United States (136 Fed. Rep., 743), United States v. Reiss (136 Fed. Rep., 741), and Rich v. United States (61 Fed. Rep., 501) that this rule is not unyielding, but that the real purpose should be to gather the intent of Congress from the enactment. This is a correct statement of the law; but we think it does not militate against the position of the importers in the present case. In De Forest v. Lawrence (13 How., 274) the question involved was whether sheepskins were dutiable as raw hides and skins of all kinds, whether dry, salted;

or pickled. After reviewing the tariff acts upon the subject the court said:

The article (sheepskins with the wool on) has never been classed in any of the tariff acts under the designation of skins; but has been charged always, since it came under the notice of these acts, with a specific duty. It has been thus charged, since the act of 1828, down to the present act, a period of 18 years. And, although it has been invoiced, and is known in trade and commerce, by the designation of sheepskin raw, and dried, and may, generally speaking, be properly ranged under the denomination of skins, as a class; yet, having a known designation in the revenue acts, distinct from the general class to which it might otherwise be assigned, we must regard the article in the light in which it is viewed by these acts, rather than in trade and commerce. For, when Congress, in legislating on the subject of duties, has described an article so as to identify it by a given designation for revenue purposes, and this has been so long continued as to impress on it a particular designation as an article of import, then it must be treated as a distinct article, whether there be evidence that it is so known in commerce or not. It must be taken as thus known in the sense of the revenue laws, by reason of the legal designation given to it, and by which it has been known and practiced on at the customhouse.

If this language be applied to the present importation, there can be but one conclusion reached as to the intent of Congress in the employment of the word "tamarinds" since 1883. It has been the rule of interpretation announced by the Secretary of the Treasury and continued through three different tariff acts that tamarinds included an article other than fresh tamarinds, and when that word is employed in the free list it refers to the tamarinds of commerce. We can not conceive that it was the purpose of Congress to depart from this long-continued designation of tamarinds, nor do we think that it should be excluded from the free list by any uncertain enactment. Indeed this rule is conceded by Government's counsel, and it is admitted that the rule is settled that Congress, in reenacting successive tariff acts containing the same provision, must be understood to have so legislated in the light of departmental construction or construction given to such language by the courts, citing United States *v.* Proctor (145 Fed. Rep., 126).

But it is claimed that as the words "packed in molasses" have been added to the preserved-fruit paragraph of the present act, phraseology which had not appeared in any previous tariff law, the court is called upon to determine which is the proper classification, and it is said in this connection that there is evidence in the record that tamarinds, fresh in the pod, are now the subject of importation and of commercial transactions. As we have pointed out, the commercial transactions in fresh tamarinds are very limited indeed, and it is very doubtful whether the case would not fall in this aspect within the ruling of this court in United States *v.* Rosenstein (1 Ct. Cust. Appls., 304). But whether it does or not, the history of the meaning which has been given in the previous tariff acts and by departmental construction for many years leads to the conclusion

that the word "tamarinds" in the free list is used in a sense sufficiently comprehensive to cover the importation in question. While it is true that the provisions of paragraph 274 are broadened by the addition of the new words "preserved or packed in molasses," this fact does not operate to bring within its provisions an importation which in terms is made free in the free list. It would not be material under what provision of the tariff law the claim of free entry was asserted. If tamarinds such as those involved were not the tamarinds of commerce, they would have been dutiable under previous statutes under the catch-all clause. The long-continued usage of the Treasury Department went further than to exclude the importation from the comfit and sweetmeats section, but affirmatively established that they were entitled to entry under the free list.

The Board of General Appraisers reached the correct result, and the decision is *affirmed*.

DE VRIES, Judge, did not sit in this case.