## BROWN & CO. *v.* UNITED STATES (No. 1553).[1]

SOYA BEANS, COOKED AND PACKED, ADMITTED FREE.

Soya beans, cooked and salted, but not enough to so change them as to prevent their identification as soya beans, and packed in tins, jars, bottles, or similar packages, do not thereby lose their status as soya beans, and are more specifically classified on the free list, paragraph 606, tariff act of 1913, as "soya beans" than under paragraph 199 as "beans, * * * prepared or preserved, or contained in tins, jars, bottles, or similar packages."

United States Court of Customs Appeals, December 6, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7689 (T. D. 35143).

[Reversed.]

*Allan R. Brown* for appellants.

*Bert Hanson*, Assistant Attorney General (*Samuel Isenschmid*, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Merchandise imported at the port of New York was classified by the collector of customs as beans, prepared or preserved, in tins, jars, bottles, or similar packages. The importation was accordingly assessed for duty at 1 cent per pound, including the weight of the coverings, under the provisions of paragraph 199 of the tariff act of 1913, which, in so far as it is pertinent to the case, reads as follows:

199. Beans, * * * prepared or preserved, or contained in tins, jars, bottles, or similar packages, including the weight of immediate coverings, 1 cent per pound; * * *.

The importers protested that the goods were soya beans, and that they were therefore free of duty under that part of the free list which is known as paragraph 606, and which reads as follows:

Free list. That on and after the day following the passage of this act, except as otherwise specially provided for in this act, the articles mentioned in the following paragraphs shall, when imported into the United States, * * * be exempt from duty: * * *.

606. Soya beans.

On the hearing before the board it was stipulated between counsel for the Government and counsel for the importers to refer samples of the merchandise involved in the appeal to the Department of Agriculture for a report as to whether or not they were soya beans, the report when made to be received in evidence. In accordance with that stipulation samples of the goods in controversy were submitted to the Department of Agriculture, which subsequently reported to the board, through the Secretary of the Treasury, that

---

[1] Reported in T. D. 35977 (29 Treas. Dec., 699).

they were seeds of *Glycine hispida* or soy bean. In the report attention was called to the fact that the samples which are here in controversy were more or less disintegrated, but that there seemed to be no question of their being seeds of *Glycine hispida*.

The appraiser officially returned the merchandise as beans prepared or preserved in tins, jars, bottles, or similar packages.

It is admitted by the attorney for the appellants that the beans are prepared and that "the appearance of the samples would indicate that the beans have been cooked and perhaps salted to a certain extent for preservation."

The Government contends, first, that the provision in the free list relied upon by the importers was intended to cover soya beans in their natural state and not soya beans which were cooked or otherwise prepared; second, that soya beans cooked are something more than soya beans and are in fact not soya beans at all, but a food product; third, that beans of all kinds imported in tins, jars, bottles, or similar packages, whether prepared or not, are specifically provided for in paragraph 199, and that soya beans so packed are dutiable thereunder and not entitled to free entry by virtue of paragraph 606.

Whatever may have been the treatment to which the goods were subjected, it is clear from the report of the Department of Agriculture that their preparation, cooking, or salting did not alter their status as beans or change or modify them sufficiently to prevent their identification as soya beans. It is a fact that they are something more than soya beans in the *natural* state, but on the record they are not something more than soya beans in the sense that they are something else. That is to say, they are soya beans advanced in condition, but not so far advanced as to be converted into a new article. See Neuman & Schwiers Co. *et al v.* United States (4 Ct. Cust. Appls., 64; T. D. 33310); United States *v.* Winter & Smillie (4 Ct. Cust. Appls., 392; T. D. 33836); Stein, Hirsch & Co. *v.* United States (6 Ct. Cust. Appls., 154; T. D. 35397); Chew Hing Lung *v.* Wise (176 U. S., 156, 158–159).

It may be conceded that a person ordering soya beans from a seed house would hardly expect to receive merchandise of the kind imported. On the other hand, it is equally true that the importation might well be regarded as a proper delivery of soya beans ordered for use as a food.

Taking it as established by the report of the Department of Agriculture that the goods are soya beans, we think the three contentions of the Government may be reduced to the single proposition that paragraph 606 should be interpreted as if it read "soya beans, except such as are prepared or are contained in tins, jars, bottles, or

similar packages." The difficulty with that position is that the paragraph does not so read, and that all goods ordinarily recognized as soya beans and commonly included in that category must be classified as soya beans in the absence of any testimony or evidence showing that in trade and commerce the designation had, prior to the tariff act of 1913, a meaning different from that popularly assigned to it. No such testimony or evidence having been produced, we must give to the designation the signification attributed to it in common speech, and we therefore can not hold that soya beans prepared and soya beans packed in tins, jars, bottles, or similar packages are not soya beans and that consequently they are excluded from the operation of the free-entry provision claimed in the protest. It is true that oil manufacturers and soap makers, at the time the tariff act of 1913 was under consideration, did urge upon Congress the advisability of admitting free the soya bean in order that domestic manufacturers might effectively compete with the soya-bean oil produced abroad and imported into the country for soap making. But from that fact, standing by itself, we can not deduce, as against the language which Congress chose to employ, a legislative intent to limit free entry of soya beans to such soya beans as were fit only for the manufacture of oil, especially as Congress must be presumed to have known, and indeed was actually informed, that soya beans were used not only for the making of oil but also as a food for man and beast. See Hearings before the Committee on Ways and Means on Tariff Schedules (Vol. I, p. 74, and Vol. VI, p. 5923); International Encyclopedia (Vol. XVIII, p. 380); Encyclopedia Britannica, eleventh edition (Vol. III, p. 573).

The principle is well established that in determining the classification of goods an *eo nomine* designation must, unless a legislative intent to the contrary is clearly indicated, be preferred to terms of general description and to enumerations which are broader in scope and less specific. Arthur *v*. Lahey (96 U. S., 112, 113); Vietor *v*. Arthur (104 U. S., 498, 499); Robertson *v*. Glendenning (132 U. S., 158, 159); Chew Hing Lung *v*. Wise (176 U. S., 156, 160). In accordance with that doctrine we have held that kippered herrings in tin cans was dutiable as kippered herrings rather than as fish in tin packages; that tamarinds in molasses were duty free as tamarinds rather than dutiable as fruits packed in molasses; that herrings or mackerel, pickled or salted and packed in tin cans, was dutiable as herrings or mackerel, pickled or salted, rather than as fish in tin packages; and that herrings, pickled and boned, and herrings, pickled, skinned, and boned were dutiable as herrings, pickled, rather than as fish, pickled, or as fish, skinned or boned.

United States v. Rosenstein (1 Ct. Cust. Appls., 304; T. D. 31357);
United States v. John Duncan Sons et al. (2 Ct. Cust. Appls., 380;
T. D. 32097); United States v. Smith & Nessle Co. (4 Ct. Cust.
Appls., 70; T. D. 33312); United States v. Haaker & Co. et als.
(4 Ct. Cust. Appls., 471; T. D. 33884). And following these de-
cisions we must hold here that soya beans cooked and soya beans
in jars and bottles are more specifically provided for under the
eo nomine designation "soya beans" than by a provision for "beans,
*   *   *   prepared or preserved, or contained in tins, jars, bottles,
or similar packages."

The learned Assistant Attorney General has cited in support
of the Government's contention the cases of Rich v. United States
(61 Fed., 501); United States v. Reiss & Brady (136 Fed., 741); and
Brennan v. United States (136 Fed., 743).

In Rich v. United States the collector assessed certain chrome,
green, ocher, umber, and sienna colors of fine grades, put up in
tubes for artists' use and commercially known as "artists' colors in
tubes," under that part of paragraph 61 of the tariff act of 1890,
which reads as follows:

> 61. *   *   *   Artists' colors of all kinds, in tubes or otherwise, twenty-five
> per centum ad valorem; *   *   *.

The importer claimed that the goods were colors provided for by
their names in paragraphs 50 to 55, 57 to 60, and 62 to 67 of the same
act. The Circuit Court of Appeals held that as the articles were
commercially known as "artists' colors in tubes," the provision for
artists' colors in tubes should prevail as against a provision for the
colors by name, not on the ground that the eo nomine designation
did not control, but on the ground that the colors mentioned in the
paragraphs relied upon by the importer were in commerce a different
article from the colors put up in tubes for artists' use.

In United States v. Reiss & Brady, figs preserved in sugar or mo-
lasses, or in their own juices, or in their own juices flavored with
maraschino, were classified by the collector under that part of para-
graph 263 of the tariff act of 1897 which reads as follows:

> 263. *   *   *   Fruits preserved in sugar, molasses, spirits, or in their own
> juices, not specially provided for in this act, one cent per pound and thirty-five
> per centum ad valorem; *   *   *.

The importers claimed that the goods were figs dutiable under
that part of paragraph 264 which reads as follows:

> 264. Figs, plums, prunes, and prunelles, two cents per pound; *   *   *.

It was decided in that case that the goods in controversy were
commercially regarded as fruits preserved in sugar, molasses, spirits,
or their own juices, and not as figs, which term the Circuit Court of

Appeals held had come to mean in the trade dried figs commonly imported and sold in baskets and boxes. It was therefore concluded by the court that the goods were dutiable as assessed under paragraph 263 and not under paragraph 264 as claimed by the importers.

In the case of Brennan *v.* United States the Circuit Court of Appeals was called upon to determine whether, as claimed by the collector, limes in brine were dutiable as limes under paragraph 266 of the tariff act of 1897, or were, as claimed by the importer, free of duty under paragraph 559 as fruits in brine not specially provided for. The Circuit Court of Appeals held on the issue thus presented. that limes in brine were not limes, and that a departmental practice of probably more than 30 years had established their status as pickles. The court pointed out that the provision for " fruits in brine " in the act of 1897 took limes in brine out of the classification of pickles, but maintained that they were just as much a different article from limes under the new provision as they were when long-continued departmental practice had fixed their status as pickles.

In two of the cases commercial usage and in the third long-continued departmental practice had given to the *eo nomine* designation under consideration a special and particular signification which did not embrace the goods in litigation. Consequently, in those cases, it was not a question of whether the *eo nomine* designation should be preferred to terms of general description, but whether the *eo nomine* designation as used in the tariff act and understood in commerce was applicable to the merchandise. Here no claim is made that the designations of the competing provisions have any special commercial meaning different from that ordinarily assigned to them, and giving to such designations their common meaning, as we are bound to do, it is very evident that the importation might be properly classified under either of the competing paragraphs were the other out of the way. From that it follows that the *eo nomine* designation is applicable to the merchandise and that the issue at bar is not within the reasoning of the cases cited by the Government.

As the record on this appeal discloses no evidence which would justify us in concluding that soya beans cooked or prepared are no longer entitled to the designation of soya beans, and as we find nothing in the tariff act or in the history of the legislation which would warrant us in saying that Congress intended that the terms of general description in paragraph 199 should be preferred when brought into competition with the *eo nomine* designation of paragraph 606, we must hold that the merchandise was classifiable as soya beans rather than as beans prepared or as beans in tins, bottles, or similar packages.

The decision of the Board of General Appraisers is *reversed.*