UNITED STATES *v.* LA MANNA, AZEMA & FARNAN ET AL. (No. 2702)[1]

CONSTRUCTION—CHANGE IN LANGUAGE—FORMER ACTS—HISTORY OF PARA-
GRAPH—ONIONS, PARAGRAPH 768, TARIFF ACT OF 1922—PICKLED
ONIONS.

In the tariff acts of 1890, 1894, and 1897 onions were provided for by the bushel; and in those of 1909 and 1913 by the "bushel of 57 lbs." In the act of 1922 they are provided for by the pound. The Tariff Commission's 1921 Summary of Tariff Information stated that the change had been made "from bushels to pounds to conform to commercial usage." No change in classification was intended; and the provision of paragraph 768, Tariff Act of 1922, for onions, means, as held under former acts and indicated by the use of the dry measure "bushel," ordinary onions in their natural state. Pearl onions peeled, pickled in small bottles, used as a condiment, are dutiable as pickled vegetables, under paragraph 773. *Brown v. United States,* 6 Ct. Cust. Appls. 415, and G. A. 8845, T. D. 40376, distinguished.

---
[1] T. E. 41647.

United States Court of Customs Appeals, May 8, 1926

APPEAL from Board of United States General Appraisers, G. A. 9055, T. D. 41172 [Reversed.]

*Charles D. Lawrence,* Assistant Attorney General (*Oscar Igstaedter* and *Ralph Folks,* special attorneys, of counsel), for the United States.

*Barnes, McKenna & Halstead* (*Samuel M. Richardson* of counsel) for appellees.

[Oral argument April 20, 1926, by Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This case, before the Board of General Appraisers, was the consolidation of four protests in three entries made by three different importers.

The appraiser's answer to three of the protests describes the merchandise as follows:

The merchandise in question is described on Invoice #1 as pearl onions and consists of onions peeled and put up in vinegar pickle and packed in glass bottles. It was returned for duty as vegetables pickled at 35% ad valorem under paragraph 773.

The appraiser's answer to the fourth protest was as follows:

The merchandise in question consists of onions preserved in bottles. It was returned for duty as vegetables preserved not specially provided for, at 35% under par. 773, act of 1922.

At the hearing before the board it was admitted, by importers, that the merchandise was imported as condiments and that the onions had been peeled.

The exhibits accompanying the appeal show the merchandise to consist of extra small white onions, ranging in size from about one-eighth of an inch in diameter to about one-fourth or three-eighths of an inch in diameter, put up in bottles of white vinegar. The largest bottle contains 4 ounces of the pickled onion exclusive of the vinegar, while the smaller ones contain but 1¾ ounces. They were invoiced as pearl onions. In appearance they are irregular in shape and otherwise indicating that they have been cut and peeled, a large portion of them being smaller than small peas. They were assessed for duty under paragraph 773 of the Tariff Act of 1922 as vegetables, pickled, which paragraph reads as follows:

773. Vegetables, if cut, sliced, or otherwise reduced in size, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for: * * * 35 per centum ad valorem.

The importers protested, claiming the goods to be dutiable as onions, under paragraph 768, which reads as follows:

768. Onions, 1 cent per pound; garlic, 2 cents per pound.

The board sustained the protest, from which action the Government has appealed to this court.

The board, in sustaining the protest, held the merchandise to be onions under paragraph 768, *supra*, dutiable at .1 cent per pound, and the bottles were held to be separately dutiable at 1½ cents per pound or 50 cents a gross, under paragraph 217, according to their capacity.

The decision of the board clearly indicates that it believed this merchandise to have been properly classified by the collector, and that they were more than onions, and were, in fact, pickles. It felt bound by the decision of this court in *Brown* v. *United States,* 6 Ct. Cust. Appls. 415, and by a recent board decision, *Conkey* v. *United States,* G. A. 8845, T. D. 40376, now on appeal to this court. In the *Conkey* case the board followed the ruling in the *Brown* case.

The appellees rely almost entirely upon the authority of the two last cited cases, and contend that the *eo nomine* designation of merchandise without qualifying words controls in customs law over a general class description, which class description also includes the merchandise but which carries with it a clause, "not specially provided for."

In the *Brown* case, *supra*, the importation consisted of soy beans which had been cooked, and perhaps salted to a certain extent for preservation, and packed in tins, jars, bottles, or similar packages. The question, there, was whether the merchandise should have been classified under paragraph 199 of the tariff act of 1913, which reads as follows:

199. Beans, * * * prepared or preserved, or contained in tins, jars, bottles, or similar packages, including the weight of immediate coverings, 1 cent per pound; * * *

or under paragraph 606 of the free list, as *soy beans.*

. In that case the merchandise had been submitted to the Department of Agriculture for report, which report was before the court showing that the preparation, cooking, or salting, did not alter their status as soy beans, or prevent them from being identified as such. The report, which was made to the board through the Secretary of the Treasury in accordance with the stipulation by the parties, stated that the merchandise was *soy beans.*

This court, in deciding the case, said:

The principle is well established that in determining the classification of goods an eo nomine designation must, unless a legislative intent to the contrary is clearly indicated, be preferred to terms of general description and to enumerations which are broader in scope and less specific. Arthur *v.* Lahey (96 U. S. 112, 113); Vietor *v.* Arthur (104 U. S. 498, 499); Robertson *v.* Glendenning (132 U. S. 158, 159); Chew Hing Lung *v.* Wise (176 U. S. 156, 160). In accordance with that doctrine we have held that kippered herrings in tin cans was dutiable as kippered herrings rather than as fish in tin packages; that tamarinds in molasses were duty free as tamarinds rather than dutiable as fruits packed in molasses;

that herrings or mackerel, pickled or salted and packed in tin cans, was dutiable as herrings or mackerel, pickled or salted, rather than as fish in tin packages; and that herrings, pickled and boned, and herrings, pickled, skinned, and boned were dutiable as herrings, pickled, rather than as fish, pickled, or as fish, skinned or boned.    United States v. Rosenstein (1 Ct. Cust. Appls. 304; T. D. 31357); United States v. John Duncan Sons et al. (2 Ct. Cust. Appls. 380; T. D. 32097); United States v. Smith & Nessle Co. (4 Ct. Cust. Appls. 70; T. D. 33312); United States v. Haaker & Co. et als. (4 Ct. Cust. Appls. 471; T. D. 33884).   And following these decisions we must hold here that soya beans cooked and soya beans in jars and bottles are more specifically provided for under the eo nomine designation "soya beans" than by a provision for "beans,  *  *  *  prepared or preserved, or contained in tins, jars, bottles, or similar packages."

The cases of *Rich* v. *United States*, 61 Fed. 501, *United States* v. *Reiss & Brady*, 136 Fed. 741, and *Brennan* v. *United States*, 136 Fed. 743, were discussed.   The court then concludes as follows:

In two of the cases commercial usage and in the third long-continued departmental practice had given to the eo nomine designation under consideration a special and particular signification which did not embrace the goods in litigation. Consequently, in those cases, it was not a question of whether the eo nomine designation should be preferred to terms of general description, but whether the eo nomine designation as used in the tariff act and understood in commerce was applicable to the merchandise.    Here no claim is made that the designations of the competing provisions have any special commercial meaning different from that ordinarily assigned to them, and giving to such designations their common meaning, as we are bound to do, it is very evident that the importation might be properly classified under either of the competing paragraphs were the other out of the way.   From that it follows that the eo nomine designation is applicable to the merchandise and that the issue at bar is not within the reasoning of the cases cited by the Government.

As the record on this appeal discloses no evidence which would justify us in concluding that soya beans cooked or prepared are no longer entitled to the designation of soya beans, and as we find nothing in the tariff act or in the history of the legislation which would warrant us in saying that Congress intended that the terms of general description in paragraph 199 should be preferred when brought into competition with the eo nomine designation of paragraph 606, we must hold that the merchandise was classifiable as soya beans rather than as beans prepared or as beans in tins, bottles, or similar packages.

Applying the reasoning of the *Brown* case to the issues at bar, it is argued that, in the absence of commercial proof or long-continued departmental practice, if these pickled pearl onions are onions in the sense used in paragraph 768, they are, in the absence of anything showing the congressional intent to be otherwise, provided for *eo nomine* in the paragraph, and, therefore, more specifically provided for than in the pickled vegetable paragraph.

In preceding tariff acts onions were provided for as follows:

1890. Onions, 40 cents per bushel.
1894. Onions, 20 cents per bushel.
1897. Onions, 40 cents per bushel.
1909. Onions, 40 cents per bushel of 57 lbs.
1913. Onions, 20 cents per bushel of 57 lbs.

In T. D. 26654, G. A. 6131, the Board of General Appraisers held a barrel of onions preserved in brine to be "vegetables, prepared or preserved, including pickles" rather than onions under paragraph 249 of the tariff act of 1897. In its decision the board said:

The provision for the measurement of the onions provided for in this paragraph by the bushel, a dry measure, would indicate, in our opinion, that Congress had in mind the ordinary onion in its natural state, and not in a solution of brine.

It will be noticed that in paragraph 768 of the Tariff Act of 1922 onions were provided for at 1 cent per pound. Congress having provided for onions in the act of 1890, 1894, and 1897, to be dutiable by the *bushel*, and in 1909 and 1913 by the *bushel of 57 pounds*, and in the act of 1922 by the *pound*, the inquiry immediately presents itself, did the change in language mean that Congress intended a change in classification?

We find at page 795 of the Summary of Tariff Information, by the United States Tariff Commission, furnished in 1921, the following significant statement:

The basis of duty on onions has been changed from bushels to pounds to conform to commercial usage.

We think it is a matter of common knowledge that there are many regulations and ordinances requiring that similar merchandise be sold by the pound rather than by the bushel. It is also probable that Congress desired to get away from dishonest practices and business methods connected with undersized measuring units. We do not believe Congress, in the Tariff Act of 1922, by the change in wording, meant to include pickled onions in paragraph 768 any more than it intended to include pickled onions in the onion paragraphs of the former tariff enactments.

While it can not be disputed, under this record, that the contents of the small bottles may in a sense be onions, we do not believe they are the onions which Congress intended to be dutiable under paragraph 768, and, therefore, do not believe they are provided for *eo nomine*. As was said by General Appraiser Somerville in T. D. 26654, *supra*, we think Congress, in paragraph 768, meant the ordinary onion in its natural state and not in a solution of brine, or other pickling ingredients. A consideration of the *eo nomine* provisions for onions and other vegetables, and the pickled vegetable paragraph leads us to the conclusion that Congress did not intend that the paragraph for onions at 1 cent per pound should be broad enough to include merchandise like that involved herein. It would require about nine of the small bottles containing the pickled onions to equal one pound, upon which there would be a duty of but 1 cent. Is it reasonable to presume Congress could have intended such a result? We think not.

While the cases of *United States* v. *Reiss & Brady,* and *Brennan* v. *United States, supra,* may have been to some extent controlled by commercial usage and long-continued departmental practices, the reasoning in each of these cases supports the contention of the Government in this case. In the *Reiss & Brady* case, figs preserved in sugar or molasses, or in their own juices, were held to be fruits preserved rather than figs. In the *Brennan* case, *supra,* limes in brine were held to be dutiable as fruits in brine and not as limes.

In the case at bar, the merchandise is more than onions in one sense and less than onions in another. It is a new article of commerce made from onions which have been peeled, cut, and soaked in a pickling solution.

In the *Brown* case, *supra,* the soy beans were known as soya beans and were so reported by the Department of Agriculture after they had been cooked and salted and packed in tins. There they were eaten and used as soy beans are used, but in this instance, these are no longer onions in the proper sense, but are pickles not used for the general or ordinary purposes for which the ordinary dry onions are used, but are used as condiments or relishes.

The case of *Mawer Co.* v. *United States,* 7 Ct. Cust. Appls. 493, is relied upon by the importers. In that case olives pitted and stuffed with sweet red peppers were held to be olives, dutiable at 15 cents per gallon, and not edible fruits prepared. It was pointed out in that case that while the olives had been changed in condition, nevertheless they retained the form and characteristics of olives and that they were so known, and so bought and sold; that they were used as olives; that whatever had been done to them had neither destroyed their identity as olives nor altered their nature; that they were still olives.

We are, therefore, of the opinion that neither the *Brown* case nor the *Mawer* case is controlling in the issues at bar, and that they are easily distinguishable from the facts at hand.

The judgment of the Board of General Appraisers is *reversed.*

BARBER, J., concurs in the conclusion.