(C. D. 1163)

CHARLES T. WILSON COMPANY, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 9, 1949)

*Sharretts & Hillis* (*Howard C. Carter* of counsel) for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Harold L. Grossman* and *Sybil Phillips*, special attorneys), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

CLINE, Judge: This is a protest, arising at the port of New York, against the collector's assessment of duty on merchandise described in the invoice as "onion powder" and "sliced dehydrated onions" at 35 per centum ad valorem under paragraph 775 of the Tariff Act of 1930, as vegetables, prepared, not specially provided for. It is claimed that the merchandise is properly dutiable at 25 per centum ad valorem under paragraph 781 as spices, not specially provided for, or at 20 per centum ad valorem under paragraph 1558 as a nonenumerated manufactured article, or at 2½ cents per pound under paragraph 770 as onions.

The pertinent provisions of the tariff act are as follows:

PAR. 775. Vegetables (including horseradish), if cut, sliced, or otherwise reduced in size, or if reduced to flour, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for; * * * 35 per centum ad valorem; * * *.

PAR. 770. Onions, 2½ cents per pound; garlic, 1½ cents per pound.

PAR. 781. Spices and spice seeds: Cassia, cassia buds, and cassia vera, ground, 5 cents per pound; cloves, ground, 6 cents per pound; clove stems, ground, 5 cents per pound; cinnamon and cinnamon chips, ground, 5 cents per pound; ginger root, not preserved or candied, ground, 5 cents per pound; mace, ground, 8 cents per pound; Bombay, or wild mace, unground, 18 cents per pound; ground, 22 cents per pound; mustard seeds (whole), 2 cents per pound; mustard, ground or prepared in bottles or otherwise, 10 cents per pound; nutmegs, ground, 5 cents per pound; pepper, capsicum or red pepper or cayenne pepper, unground, 5 cents per pound; ground, 8 cents per pound; paprika, ground or unground, 5 cents per pound; black or white pepper, ground, 5 cents per pound; pimento (allspice), ground, 3 cents per pound; sage, unground, 1 cent per pound; ground, 3 cents per pound; curry and curry powder, 5 cents per pound; mixed spices, and spices and spice seeds not specially provided for, including all herbs or herb leaves in glass or other small packages, for culinary use, 25 per centum ad valorem:  *  *  *

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

At the trial Lloyd M. Trafford, vice president of Charles T. Wilson Co., Inc., testified that the merchandise herein consisted of 95 tins of dehydrated onion powder and 701 tins of dehydrated sliced onions imported from Mexico; that he had seen the manufacturing process in Mexico; that powdered onions were prepared by dehydrating onions and grinding them; that sliced onions were prepared by slicing onions and running them through a dehydrater; that the initial product in both operations was the common onion; that the customers to whom onion powder was sold were in the spice business; that they would take material such as onion powder and process it for food seasonings as a spice; that the witness had tasted and eaten products containing onion powder and sliced dehydrated onion; that they give relish to food, and gratify the taste; that they are pungent and appetizing substances; that he considered them to be aromatic vegetable substances; that in his opinion they are spices.

On cross-examination the witness stated that he had seen spice lists upon which onion salt and garlic salt were listed as spices for seasoning; that onion salt is onion powder mixed with salt; that housewives use onion salt in cooking; that he had never seen onion powder as such used by housewives.

Charles Schnurman, a salesman employed by J. Raphael & Son, testified that his company received a shipment of onion powder from Charles T. Wilson Co., Inc., in June or July of 1943; that he sold that shipment to sausage manufacturers; that sausage manufacturers make frankfurters, bologna, meat loaf, liverwurst, hams, spiced beefs, and combinations of meats and gravies; that he had seen his customers use onion powder; that in making sausage, they grind up the meat, add water or ice, then add seasoning, such as pepper, nutmeg, mace,

cardamom, and dehydrated or powdered onion; that he brings home samples of onion powder and his wife uses it on chicken and roast meats; that onion powder gives relish to food, gratifies the taste, and is a pungent and appetizing substance; that in his opinion it is a seasoning; that in the trade it is referred to as a seasoning or flavor and is considered a spice.

On cross-examination the witness stated that this merchandise is invoiced as onion powder; that it is always bought and sold as onion powder; that when he eats meat or chicken prepared with onion powder, he tastes the onion; that onion powder makes the product tastier; that without it the dish tastes flat; that the merchandise is used in the condition as imported by sausage manufacturers; that it is not used as an ingredient but as a seasoning; that it brings out the flavor of the frankfurter; that in his opinion the ordinary onion is a vegetable.

Defendant called Technical Sergeant Joseph Meinohl, who testified that he had been a· cook in civilian life and had operated his own restaurant from 1937 to 1942; that he entered the Army in March 1942 and had served as cook, mess sergeant, mess co-ordinator, mess adviser, instructor for cooks, and is now food-service technician and mess adviser; that he has made onion soup; that either fresh or dehydrated onions can be used in it; that under normal conditions fresh onions are used; that fresh onions are used in western omelets and creamed onions. A list of dishes was then read to the witness who stated that he had made them all and that they had one ingredient in common; namely, onions; that normally fresh onions are used in those dishes, but that dehydrated onions are used in field operations and overseas; that they are a substitute for fresh onions and are used for the same purpose; that the fundamental use of the dehydrated onion is as a vegetable.

On cross-examination the witness stated that when creamed onions are prepared with the use of dehydrated onions, the result is shreds of onion in a cream sauce; that in preparing creamed onions for 100 men, 12½ pounds of fresh onions or 1 pound of dehydrated onions would be used; that a little more flour would be used with dehydrated onions to give more body to the dish; that dehydrated onions may be used wherever fresh onions can be used for flavoring and seasoning purposes; that the use of dehydrated onions gives relish to foods; that it gratifies the taste; that he does not consider dehydrated onions a direct seasoning but a by-flavor, that is, they improve the flavor of the particular dish in which they are used.

Plaintiff claims that the merchandise is properly dutiable under paragraph 770 as onions on the ground that the *eo nomine* provision includes all forms of the article. Defendant contends, on the other

hand, that the legislative history and judicial decisions in regard to onions indicate that the provision in paragraph 770 is limited to onions in their natural state.

The general rule was stated in *Nootka Packing Co.* v. *United States*, 22 C. C. P. A. 464, T. D. 47464, as follows (p. 470):

> The clear weight of the authorities on the subject is that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article.

The provision for onions in paragraph 770 is without limitation; therefore, it is necessary to examine its legislative history and the decisions interpreting it in order to determine whether Congress intended it to include onions in all forms.

Onions have been provided for *eo nomine* since the Tariff Act of 1890. In that act and in the acts of 1894 and 1897 they were provided for by the bushel, and in the acts of 1909 and 1913 by the bushel of 57 pounds. In *Chas. Strovopoulos* v. *United States*, 10 Treas. Dec. 159, T. D. 26654, it was held that the provision for onions in the Tariff Act of 1897 was limited to onions in their natural state and that onions, preserved in brine, were dutiable as vegetables, prepared or preserved. The court said:

> The provision for the measurement of the onions provided for in this paragraph by the bushel, a dry measure, would indicate, in our opinion, that Congress had in mind the ordinary onion in its natural state, and not in a solution of brine.

The Tariff Act of 1922 provided for onions by the pound and the Summary of Tariff Information, 1921, states (p. 795):

> The basis of duty on onions has been changed from bushels to pounds to conform to commercial usage.

This provision was before the court in *United States* v. *La Manna, Azema & Farnan*, 14 Ct. Cust. Appls. 123, T. D. 41647. It was held that pearl onions, peeled, cut, and put up in vinegar pickle, were not dutiable under paragraph 768 as onions but were dutiable under paragraph 773 as vegetables, pickled. The court held that the change in language in the Tariff Act of 1922 did not mean that Congress intended to include pickled onions in paragraph 768 any more than it intended to include them in the onion paragraphs of former tariff acts. The court said (p. 127):

> While it can not be disputed, under this record, that the contents of the small bottles may in a sense be onions, we do not believe they are the onions which Congress intended to be dutiable under paragraph 768, and, therefore, do not believe they are provided for *eo nomine*. As was said by General Appraiser Somerville in T. D. 26654, *supra*, we think Congress, in paragraph 768, meant the ordinary onion in its natural state and not in a solution of brine, or other pickling ingredients.

This case was followed in *United States* v. *Pacific Trading Co.*, 14 Ct. Cust. Appls. 131, T. D. 41649, and *Budlong Pickle Co.* v. *United States*, 16 Ct. Cust. Appls. 174, T. D. 42808.

While the Tariff Act of 1930 was being prepared, Congress had before it the Summary of Tariff Information, 1929. The following statement in connection with the provision for onions is contained therein (p. 1424):

In the tariff acts of 1890, 1894, and 1897, onions were provided for by the bushel, and in the acts of 1909 and 1913, by the bushel of 57 pounds. In the act of 1922 they are provided for by the pound. The Tariff Commission's Summary of Tariff Information, 1921, stated that the change had been made "from bushels to pounds to conform to commercial usage." The Court of Customs Appeals has held that by this change no change in classification was intended and that the provision under paragraph 768 for onions means, as held in former acts and indicated by the use of the dry measure "bushels," ordinary onions in their natural state. (14 Ct. Cust. Appls. 123.)

The Tariff Act of 1930, as enacted, provides for onions by the pound, differing from the provision in the act of 1922 only as to the rate. When Congress reenacted the provision without substantial change, although its attention was called to the decision of the Court of Customs Appeals in *United States* v. *La Manna, Azema & Farnan*, *supra*, it must have intended to ratify the court's construction limiting the paragraph to ordinary onions in their natural state. See *United States* v. *The Water Treatment Co. of America*, 33 C. C. P. A. 174, 178, C. A. D. 332.

On May 16, 1921, the Assistant Secretary of the Treasury wrote a letter to the Collector of Customs stating that the department concurred in the proposed change from the practice of classifying garlic and onions, dehydrated and ground to flour, as nonenumerated manufactured articles, to classifying them as vegetables, prepared. (T. D. 38709.) Two tariff acts have been passed since then without any pertinent change in the provision for onions.

In view of the legislative history, judicial decisions, and administrative practice in regard to onions, it must be held that the general rule as to *eo nomine* designation does not apply and that the provision for onions in paragraph 770 is limited to onions in their natural state. Since the onions herein have been dehydrated and either cut or ground into powder, they are no longer in their natural state and cannot be classified under paragraph 770.

A further indication that the *eo nomine* provisions for vegetables, without words of limitation, in the Tariff Act of 1930 are limited to vegetables in their natural state is found in *United States* v. *Wing Chong Lung Co. et al.*, 33 C. C. P. A. 36, C. A. D. 312. That case involved turnips which had been sliced, dried, salted, and packed, and it was claimed that they were properly dutiable under paragraph 773

as turnips. The court held that Congress intended paragraph 773 to cover turnips in their natural state and paragraph 775 to cover all vegetables in the form or condition there described and not specially provided for. The court said (p. 38):

In the Summary of Tariff Information, 1929, page 1445, in which the Committee on Ways and Means of the House of Representatives was informed concerning paragraph 773 of the Tariff Act of 1922, the predecessor of paragraph 775 of the present tariff act and substantially identical thereto, it was stated that the paragraph included "All prepared or preserved vegetables not elsewhere provided for." On page 1451 of the same publication, with reference to the same paragraph, turnips are included among the dried and desiccated vegetables produced in the United States. Drying and desiccating are means of preservation, and therefore it is clear to us that the intent of Congress was, as is contended by the Government, that all vegetables in the condition described in paragraph 775, if not specially provided for as such, clearly come within its scope.

While onions are not mentioned among the dried and desiccated vegetables listed on page 1451 of the Summary of Tariff Information, 1929, they are mentioned on page 1452 under vegetables, pickled, and on page 1454 under white pickling onions. Congress, therefore, knew that onions in all forms would not be included under the *eo nomine* provision for onions unless the language of the paragraph were changed. This was not done.

The merchandise herein is therefore properly dutiable under paragraph 775 as vegetables, prepared or preserved, unless one of plaintiff's other claims can be sustained.

Plaintiff's second claim is that the merchandise is properly dutiable under paragraph 781 as a spice, not specially provided for, on the ground that the provision for spices is a designation by use and that the articles herein, onion powder and dehydrated sliced onions, are used as spices.

Plaintiff's witnesses testified that onion powder and sliced dehydrated onions gave relish to food, gratified the taste, made the food pungent and appetizing, and were used as seasoning. Sergeant Meinohl gave similar testimony in regard to sliced dehydrated onions, stating that he considered them a by-flavor rather than a direct seasoning, but that they are used to improve the flavor of the particular dish being cooked.

The following dictionary definitions are pertinent in determining whether the merchandise herein may be considered a spice (Webster's New International Dictionary, Second Edition):

Onion, *n.* 1. The bulb of the Asiatic plant *Allium cepa;* also, the plant, having slender hollow tubular leaves. The bulb is a garden vegetable, having a characteristic (alliaceous) pungent taste and odor, and is eaten raw or cooked.

Spice, *n.* 4. An aromatic or savory article of food; a pungent or appetizing eatable or seasoning; — now only of condiments (see def. 5), except in *Dial. Eng.,* in which the word is applied to such things as gingerbread, sweetmeats, confectionery, currants, raisins, and other dried fruits.

5. Any of various aromatic vegetable productions, as pepper, cinnamon, nutmeg, mace, allspice, ginger, cloves, etc., used in cookery to season food and to flavor sauces, pickles, etc.; a vegetable condiment or relish, usually in the form of a powder; also, such condiments collectively.

According to these definitions, an onion is a vegetable. See also *American Ry. Express Co., Inc.* v. *Price Bros., Inc.*, 54 F. 2d 67, where the court said "An onion is a herb and a vegetable, * * *." It is common knowledge that onions are served at dinner with the principal part of the repast. They are therefore vegetables within the meaning of the tariff act. *Nix* v. *Hedden*, 149 U. S. 304.

The spices enumerated in paragraph 781 of the Tariff Act of 1930 are articles used primarily for seasoning and for the most part have no vegetable use. As to the provision for spices and spice seeds, not specially provided for, the Summary of Tariff Information, 1929, states (p. 1511):

The more important of the spices not specially provided for are thyme leaves, marjoram leaves, and bay leaves. They are all used for flavoring foods; in the pickling industry; and medicinally.

This indicates that Congress did not intend to classify ordinary vegetables, even when used as seasoning because of their pungent flavor, as spices, but included articles primarily used for seasoning and having little or no vegetable use.

Onions may be used in various ways. They may be served as vegetables with the main course, pickled, or cooked with other foods. In the latter case, they are used to add flavor or pungency to the dish. However, they are nevertheless primarily vegetables and not spices. Both onion powder and sliced dehydrated onions, according to the witnesses, are used as seasoning in cooking meats or poultry in much the same way as onions in their natural state are used. They do not become spices because of their change in form.

Plaintiff's third claim is that the merchandise is dutiable as nonenumerated manufactured articles under paragraph 1558. However, articles may not be considered nonenumerated where they are provided for elsewhere in the tariff act. *Mason* v. *Robertson*, 139 U. S. 624. Paragraph 775 provides for vegetables, "if cut, sliced, or otherwise reduced in size, or if reduced to flour, or if parched or roasted, or if pickled, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for." It is well-established that where a general class of articles is named in a tariff act, it is equivalent to an *eo nomine* enumeration of each article coming within the class. *United States* v. *Sears, Roebuck & Co.*, 20 C. C. P. A. 295, 301, T. D. 46086.

In *Hensel, Bruckmann & Lorbacher, Inc.* v. *United States*, 57 Treas. Dec. 1189, Abstract 11681, it was held that dried and powdered onions were properly classified as prepared vegetables rather than as non-

enumerated manufactured articles. See also *F. L. Kraemer & Co.* v. *United States*, 63 Treas. Dec. 682, T. D. 46338. Since the word "flour" as used in paragraph 775 has been held to be a finely ground vegetable substance, whether or not bolted (*Martel Food Corp.* v. *United States*, 15 Cust. Ct. 109, C. D. 954), onion flour is equivalent to onion powder.

For the foregoing reasons we hold that the merchandise herein, onion powder and sliced dehydrated onions, is properly dutiable under paragraph 775 as vegetables, prepared. The protest is overruled and judgment will be rendered accordingly.