(C. D. 1553)

C. J. TOWER & SONS *v.* UNITED STATES

United States Customs Court, Third Division

(Decided October 29, 1953)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*Warren E. Burger,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: These are protests, consolidated at the trial, against the collector's assessment of duty on certain merchandise as nonenumerated manufactured articles at 10 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, and the notification of the President, dated September 18, 1951, T. D. 52827. It is claimed that the merchandise is properly dutiable as hay at $1.25 per ton of 2,000 pounds under paragraph 779 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, directly, or by similitude by virtue of paragraph 1559 of the said tariff act. Other claims made in the protests were not referred to in the briefs and apparently have been abandoned by the plaintiff.

The merchandise is described in the invoices as follows:

| Protest No. | Entry No. | Description |
|---|---|---|
| 188794–K | 9624 | Ground and bagged Ontario Alfalfa Meal 13% |
| " | 11766 | 13% Ground & Bagged Ont. Alfalfa Meal |
| 191839–K | 16590 | ⁵⁄₆₄″ Grind Ontario Alfalfa Meal |
| ." | 16507 | ⁵⁄₆₄″ Grind Alfalfa Meal |
| 191840–K | 13516 | ¼″ Grind 13% Ont. Alfalfa Meal |

The pertinent provisions of the statutes involved herein are as follows:

Paragraph 1558 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, T. D. 52739, and the notification of the President, dated September 18, 1951, T. D. 52827:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 1558 | Articles manufactured, in whole or in part, not specially provided for (except the following: coconut shell char; dog food; marine glue pitch; synthetic rubber and synthetic rubber articles; tall oil or liquid rosin; textile grasses or fibrous vegetable substances; and edible preparations for human consumption other than yeast) _____ | 10% ad val. |

Paragraph 779 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 779 | Hay _____ | $1.25 per ton of 2,000 lb. |

Paragraph 1559 of the Tariff Act of 1930:

PAR. 1559. That each and every imported article, not enumerated in this Act, which is similar, either in material, quality, texture, or the use to which it may be applied to any article enumerated in this Act as chargeable with duty, shall be subject to the same rate of duty which is levied on the enumerated article which it most resembles in any of the particulars before mentioned; * * *.

At the trial, plaintiff called three witnesses, offered one exhibit, and moved to incorporate the record in the case of *C. S. Emery & Co.* v. *United States*, 15 Cust. Ct. 22, C. D. 934. The Government offered no evidence.

Hugh Barnett, president of Barnett & Co., Ltd., of Montreal, Canada, dealer in flour, feed, and grains, testified that he had been connected with that firm since 1932 and had been in the business of handling alfalfa meal and other grain products for 25 to 30 years. He stated that all of the alfalfa meal in the present cases, except that covered by entry No. 16590 in protest No. 191839–K, was purchased by him from Roy Whitwell & Sons, Glanford Station, Ontario. The

excepted item was purchased from Excel Feeds, Ltd., of Toronto, and was the same type of product.

The witness testified that alfalfa meal is used as a cattle feed, either directly, or as part of a balanced ration. The items described as ¼-inch grind, he said, are much coarser than those described as ⁵⁄₆₄-inch grind. He explained that certain manufacturers like their finished products to have a coarse appearance, particularly if they are using the alfalfa in dairy feed, while the ⁵⁄₆₄-inch grind would probably be used in pig feeds and poultry feeds. The ¼-inch grind would not be used in poultry feed, but both grinds are used in balanced rations.

Mr. Barnett stated that alfalfa hay is fed to animals directly, unchopped or chopped, and in fineness of ⁵⁄₆₄ inch, but the latter is used directly only under unusual circumstances when the animal is sick.

The witness testified also that alfalfa hay should be dried before it is ground and that it may be sun cured or dehydrated by artificial means.

Roy Whitwell, plaintiff's second witness, testified that he has been running a hay chopping or grinding outfit in Glanford Station, Ontario, since 1936. He stated that he had sold the items involved herein, except the one that came from Campbellford, Ontario [entry No. 16590], to Barnett & Co., Ltd., and that the merchandise was similar to the official sample in entry No. 9624, protest No. 188794–K, which was received in evidence as plaintiff's exhibit 1.

The witness described the process of obtaining the imported merchandise as follows: The hay is gathered from the field and stored in a barn until winter, by which time it has become dried. It is then put into a hammer mill which chops or grinds it. The hay goes into a drum, having a screen around the bottom, which holds it until it is fine enough to go through the screen. An opening in the screen of ¹⁄₁₆ of an inch produces a ⁵⁄₆₄-inch grind, and an opening of ¼ of an inch produces a ¼-inch grind. Nothing is added to or taken from the hay in the process.

Mr. Whitwell testified that dehydrated hay is a different product from plaintiff's exhibit 1. It has a higher protein and carotene content and is a greener color. It is cut in the field, while green, and then goes through an oven and is ground.

The witness was shown plaintiff's exhibits 1 and 2 in the case of *C. S. Emery & Co.* v. *United States, supra.* He stated that the merchandise in the instant case was similar to plaintiff's exhibit 1 in the *Emery* case but not to plaintiff's exhibit 2 therein. He explained that said exhibit 1 was possibly a ¼-inch grind but that exhibit 2 was a different product altogether. He said the latter was dehydrated,

mealed more, higher in protein content, and double the price of sun-cured alfalfa meal.

Carl A. Martin, owner of Milton Milling Co., Inc., testified that his firm manufactures flour, mixed feed of all kinds, and sun-cured alfalfa hay and meal, and produces a product similar to plaintiff's exhibit 1 in the instant case. He described the process as follows: Alfalfa hay is cut and left lying in the field until it is dried. It is then taken to the mows and forked into a hammer mill, a large, box-like affair with a power-driven axle, which swings around and grinds the hay until it is fine enough to go through a screen with openings of the required size. The texture of the product is determined by the speed of the machine and the size of the openings in the screen. Nothing is added to or taken from the hay. The finished product is ground hay.

Mr. Martin testified that dehydrated alfalfa meal is a different product from plaintiff's exhibit 1 in the instant case. It is made by a more expensive and altogether different drying process and is double the price of the sun-cured meal. The main difference is that it has a good vitamin-A content.

The witness was shown the exhibits in the case of *C. S. Emery & Co. v. United States, supra,* and stated that plaintiff's exhibit 1 in that case and plaintiff's exhibit 1 in the instant case were similar except for a difference in texture, the former being a little coarser and having a little longer stems than the latter. He said that plaintiff's exhibit 2 in the *Emery* case was not similar to plaintiff's exhibit 1 in the case at bar, since it was a pulverized, dehydrated alfalfa meal, dried by a mechanical process, while the instant merchandise was sun-cured, field-dried alfalfa hay.

Mr. Martin stated that alfalfa meal is fed directly to animals in the same way as hay is fed, although this use is not extensive because of the extra cost of grinding. However, it is done, he said, when one has a high producing animal and wants to get more hay into it. The chief use of ground alfalfa is in commercial feeds for all types of animals and poultry.

At the conclusion of the trial, plaintiff moved to incorporate the record in the case of *C. S. Emery & Co.* v. *United States, supra.* The Government objected on the ground that the merchandise therein was not sufficiently similar to warrant the incorporation of the record. Decision was reserved for the full division. In the briefs, plaintiff claims that the instant merchandise is similar to plaintiff's exhibit 1 in the *Emery* case, while the Government claims it is similar to plaintiff's exhibit 2 in that case. In our view, the merchandise and the issues are sufficiently similar for the record in the *Emery* case to be incorporated herein under rule 20 of the rules of this court, adopted April 25, 1949. It is so ordered.

In the incorporated case, it was stipulated that plaintiff's exhibit 1 therein was alfalfa hay that had been cut or chopped and that plaintiff's exhibit 2 was alfalfa hay that had been ground or pulverized into meal and was chiefly used as an ingredient for chicken feed. Counsel for the Government stated in his brief:

The agreed facts expressly show that Exhibit 1 is "alfalfa hay that has been cut or chopped." It is a matter of common knowledge, of which this Court may take judicial notice, that hay is fed as fodder to cattle, horses, and sheep. There is no doubt, therefore, that such a commodity is nothing more than "hay", and is properly assessable, as claimed by the plaintiff, as such.

The court held that nothing had been done to plaintiff's exhibit 1 except to cut it; that it was still identifiable as hay or grass and was, therefore, dutiable as such under the principle that an *eo nomine* designation includes all forms of the article as long as they are recognizable as such.

It was held, however, that plaintiff's exhibit 2 was not recognizable as hay, but was a greenish meal, had been dehydrated, and was used as an ingredient for chicken feed, rather than as fodder for animals. It was, therefore, held dutiable as a nonenumerated manufactured article under paragraph 1558 of the Tariff Act of 1930.

Plaintiff's exhibit 1 in the incorporated case appears to consist of a dried grass, which has been cut or chopped into small pieces, some being as much as ½ inch in length. Plaintiff's exhibit 2 in that case is a powdered substance with some very small pieces of what may be hay or grass. Plaintiff's exhibit 1 in the instant case seems to consist of small pieces of hay or grass averaging about ⅛ of an inch in length, but containing some much smaller particles.

The record in the instant case indicates that the merchandise at bar is not similar to plaintiff's exhibit 2 in the incorporated case, as that is a dehydrated article. Dehydrated alfalfa meal, according to the uncontradicted testimony of the witnesses, has different characteristics from the sun-cured variety. It contains more protein, carotene, and vitamin A, and, probably for that reason, is more costly.

The merchandise at bar appears to resemble more closely plaintiff's exhibit 1 in the incorporated case. It consists of alfalfa hay which has been chopped or ground in a hammer mill to varying degrees of fineness, some coarser and some finer than the official sample herein. The merchandise has been sun cured, and nothing has been added to or taken from the original hay in the chopping or grinding process. It is used as feed for animals, directly, as unchopped hay is used, and also as an ingredient in balanced rations for animals and poultry. There is nothing to show that it has acquired any characteristics different from those of unchopped hay, except as to form.

It is well settled that where an article is provided for *eo nomine* in the tariff act, without limitation, and without a shown legislative

intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, all forms of the article are included. *Nootka Packing Co.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464. See also *United States* v. *Nippon Co.*, 32 C. C. P. A. (Customs) 164, C. A. D. 303, where it was stated (p. 175):

* * * Many articles specifically named in the tariff act may, in some manner, be treated so as to make them more desirable for a particular purpose; but, so long as they remain the articles *eo nomine* provided for without limitation, unless the congressional intent is otherwise indicated, they should be classified under the *eo nomine* provisions.

In *Nootka Packing Co.* v. *United States, supra,* it was held that clams, which had been minced, placed in brine, and cooked, were classifiable as clams rather than as shellfish, prepared, since the merchandise could be identified as parts of clams. It was held that mincing, cleaning, and cooking did not remove them from the designation of clams. In *United States* v. *Nippon Co., supra,* it was held that the addition of monosodium glutamate to kelp did not change it into something else. See also *Crosse & Blackwell Co.* v. *United States,* 36 C. C. P. A. (Customs) 33, C. A. D. 393 (mangoes, peeled, pitted, sliced, and pickled, held dutiable as mangoes); *Brown & Co.* v. *United States,* 6 Ct. Cust. Appls. 415, T. D. 35977 (soya beans, cooked and salted, held dutiable as soya beans); *Vanillaproco, Inc.* v. *United States,* 6 Cust. Ct. 441, C. D. 510 (vanilla beans, powdered, held dutiable as vanilla beans); *K. Asai* v. *United States,* 65 Treas. Dec. 1330, Abstract 27172 (ground powdered wood charcoal held entitled to free entry as wood charcoal).

Since the tariff designation involved herein is for hay, *eo nomine,* without limitation, and since the merchandise consists of nothing more than alfalfa hay, chopped or ground, being changed in form only, we hold that it is properly dutiable as hay at $1.25 per ton of 2,000 pounds under paragraph 779 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. The protests are sustained and judgment will be rendered for the plaintiff.