## MALOUF *v.* UNITED STATES (No. 191).[1]

1. WHEAT THAT HAS BEEN BOILED, DRIED, AND GROUND OR OTHERWISE BROKEN.

    Wheat that has been boiled, dried, and ground or otherwise broken, constituting thereby a food product, has lost its character as a grain and takes on a form, nature, appearance, and use differing distinctly from those it had before being subjected to the described treatment, and it can not be properly classified as wheat, or by similitude as wheat.

2. SAME—HOW DUTIABLE.

    It would seem this commodity has no commercial designation, but it is manifestly a foodstuff manufactured from wheat, and as such was dutiable under section 6, tariff act of 1897.

### United States Court of Customs Appeals, April 10, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, Abstract 22592 (T. D. 30294).

[Affirmed.]

*Walden & Webster* for appellant.

*D. Frank Lloyd*, Assistant Attorney General (*William K. Payne* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

SMITH, Judge, delivered the opinion of the court:

A certain article of merchandise entered at the port of New York was assessed for duty by the collector as a nonenumerated manufactured article under the provisions of section 6 of the tariff act of July 24, 1897, which reads as follows:

SEC. 6. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this act, a duty of ten per centum ad valorem, *and on all articles manufactured, in whole or in part, not provided for in this act, a duty of twenty per centum ad valorem.*

The importers protested against the action of the collector and as their special ground of objection to his classification and the duties imposed set up that the importation was dutiable as wheat either directly or by similitude under the provisions of paragraph 234, which is as follows:

234. Wheat, twenty-five cents per bushel.

The Board of General Appraisers overruled the protest and the importers appealed.

On the hearing before the board the importers introduced evidence from which it appears that the merchandise in question is prepared from wheat. The grain is first boiled, then dried, and finally ground in a mill or otherwise broken. So treated the article is ready for the market and constitutes a food product which is cooked and eaten principally by Syrians.

---

[1] Reported in T. D. 31502 (20 Treas. Dec., 729).

The importers contend, first, that the merchandise is in fact wheat; second, that it is commercially known as wheat; and third, that if it is not wheat it is similar in use to wheat and therefore dutiable as such. We can not agree with the importers. The article under consideration, it is true, was originally wheat, but as the result of mechanical and other processes to which it was subjected prior to importation it lost completely its characteristics as a grain and took on a form, nature, use, and appearance distinctly different from that which it had prior to treatment. Wheat is made up of a germ surrounded by a white, starchy substance designed to furnish temporary nutriment to the germinating principle and of the bran or layers of tissue which envelop both germ and nutrient. By cooking, drying, and grinding the original grain, the germ was of course killed, the cells of the starch were broken, and the bran or enveloping tissues removed. As a result the availabilit of the grain for flour and its quality and efficiency as seed were entire destroyed. More than that, after these processes had been completed all that was left of the wheat in effect was the starchy substance, altered in physical structure at least and, with the exception that it was a starchy substance, having neither the appearance nor qualities of wheat. Indeed, an examination of the samples, which are hard, gritty, translucent, and yellowish in color, no more produces the impression or mental picture of wheat than would crushed amber.

As to whether the product can be classified by similitude as wheat by reason of similarity of use, it is sufficient to say that it can not be used either for the purpose of making flour or as wheat seed, the particular and principal uses to which wheat is dedicated. It can of course be used as a starchy food, but in that particular it is no more similar to wheat than it is to rice, oats, barley, rye, or any other grain utilized for food purposes. In use it bears no more similitude to wheat than does flour or shredded wheat, which are not wheat at all, but manufactures of wheat.

The importers produced two witnesses to prove commercial designation, but only one of them, S. F. Zaloom, was at all competent to testify on the subject. He stated that he had dealt at wholesale and retail in the article which is the subject of appeal for a period of about 15 years and that in the year 1897, and prior thereto, it was generally known and bought and sold as "crushed wheat." He further declared that it was so called by Syrians who bought it and that the Syrian name for the article was "bulgus," which means wheat. This evidence does not establish commercial designation. In it there is nothing which shows that the witness knew or was in a position to know what name was applied to the merchandise by the *trade of the country*, much less that it was definitely, uniformly, and generally known to that trade as "crushed wheat." In fact, there is nothing in the testimony of Mr. Zaloom which is at all convincing that he was

testifying to anything more than his personal practice and the practice of those who dealt with him or at most the practice and custom which may have prevailed in the locality of his particular business. It would be stretching the testimony of this witness very considerably to say that it showed that the article was definitely, uniformly, and generally, and not partially or locally known as "crushed wheat." From all that appears from the evidence it may have been known by some other designation in other parts of the country.

The importation is an article distinct in character and use from the material out of which it was made and in our opinion is a foodstuff manufactured from wheat. It was therefore dutiable as assessed.

The decision of the Board of General Appraisers is *affirmed.*

MONTGOMERY, Presiding Judge, and HUNT, BARBER, and DE VRIES, Judges, concur.