(C. D. 904)

S. B. PENICK & CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided December 23, 1944)

*Strauss & Hedges* (*Joseph Schwartz* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Robert C. O'Grady* and *Richard F. Weeks*, special attorneys), for the defendant.

Before OLIVER, WALKER, and COLE, Judges

COLE, Judge: Plaintiff corporation, a concern engaged in growing, importing, and processing botanical materials, imported from Lima, Peru, and entered at the port of New York, a shipment of merchandise described on the invoice as "Decocainized Dried Coca Leaves," which was classified under the general provision for "coca leaves" in paragraph 36 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 36), and accordingly assessed with duty at 10 cents per pound. Although several claims for different classifications are made in the protest, plaintiff's counsel, in their brief, state that "we now believe that the merchandise in question falls squarely within the meaning of 'waste' as judicially determined, and chief reliance is therefore had upon that claim," paragraph 1555 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1001, par. 1555), as amended by the British Trade Agreement published in T. D. 49753, carrying a dutiable rate of 7½ per centum ad valorem.

Plaintiff's sole witness was its technical director, a qualified chemist, who, after describing his duties as consultant to the purchasing

division, sales division, and manufacturing divisions of the company relative to the qualities and standards of merchandise purchased, processed, and sold, testified that the purchase of the instant merchandise resulted from an inquiry in coca leaf growing districts outside the United States for coca leaves which had been rendered innocuous by the removal of cocaine and the other narcotic alkaloids, resulting in the product desired in the preparation of a pastelike extract for sale to beverage manufacturers.

Admittedly, the merchandise in question consists of coca leaves from which the narcotic alkaloids, including cocaine, have been removed. In their imported condition, these coca leaves show a certain amount of decomposition in structure due to the treatment through which the cocaine has been extracted. In appearance they do not possess the reasonably good green color of fresh coca leaves but, as plaintiff's witness, Lewis, stated "resemble leaves from ordinary trees which had rotted somewhat and been dried."

These undisputed facts do not support a classification as waste, contended for by plaintiff. The authority relied upon to support such claim is *Harley Co.* v. *United States*, 14 Ct. Cust. Appls. 112, T. D. 41644. In that case, the merchandise involved consisted of rags of cotton and of wool and silk. The issue presented was whether the articles were classifiable as waste, not specially provided for, under paragraph 1457 of the Tariff Act of 1922 and therefore dutiable at 10 per centum ad valorem, as assessed by the collector, or entitled to free entry under the provision in paragraph 1601 of the Tariff Act of 1922 for "Junk, old," as claimed by the importer. In disposing of the controversy, the court said:

Waste is something rejected as worthless or not needed; surplus or useless stuff; *especially the refuse of a manufacturing process or industrial art, as coal dust or gob;* tangled spun thread (usually cotton); the refuse of a textile factory; *cotton waste, the refuse of cotton manufacture, used to clean machinery and for packing for axle boxes; broken or spoiled castings for remelting.* See "Waste" and "Cotton waste"—New Standard Dictionary; see "Waste"—Century Dictionary and Cyclopedia.

*       *       *       *       *       *       *

In the tariff sense, waste is a term which includes manufactured articles which have become useless for the original purpose for which they were made and fit only for remanufacture into something else. It also includes refuse, surplus, and useless stuff resulting from manufacture or from manufacturing processes and commercially unfit, without remanufacture, for the purposes for which the original material was suitable and from which material such refuse, surplus, or unsought residuum was derived. The latter class of waste might be appropriately designated as new waste and includes such things as tangled spun thread, coal dust, broken or spoiled castings fit only for remanufacture.

The commodity under consideration does not fit any of the categories suggested in the foregoing quotation. The testimony makes no claim and it is not otherwise suggested that coca leaves be con-

sidered as manufactured articles. Plaintiff's witness described them as "leaves picked from a bush of Erythroxylon coca or Erythroxylon truxillense and other species containing cocaine and other narcotic alkaloids." The decocainized coca leaves in question are not "refuse, surplus, and useless stuff resulting from manufacture" of a kind described in the latter part of the above pronouncement; on the contrary, they are concededly coca leaves from which a highly active and most valuable ingredient, cocaine, has been extracted. But the articles, themselves, have not lost their identity as coca leaves. They are recognized as such, useful for a definite purpose—as a flavoring agent by manufacturers of the popularly known cola drinks. There is not the slightest suggestion that after extraction of the cocaine, the coca leaves are rejected as worthless and not needed.

We have been quite willing to consider the United States Pharmacopoeia in arriving at a proper description of coca leaves, but the value of such information presented in this record through the eighth revision of the volume published in 1906, with no repetition thereof in subsequent revisions, is not determinative of the issue before us. The book is recognized as a standard by The National Food and Drugs Act which provides that "the term 'drug' as used in this act, shall include all medicines and preparations recognized in the United States Pharmacopoeia * * * for internal or external use," and *United States* v. *Merck & Co.*, 8 Ct. Cust. Appls. 171, T. D. 37288, recognized it as a standard scientific treatise which may be consulted when deemed pertinent by the court. Despite the fact the present case presents no need for information of the sort found in such a publication in order to invoke the proper statutory construction, we have given every consideration thereto and find nothing therein to contradict our conclusions as hereinafter expressed.

It was held in *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. 464, T. D. 47464, that "an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article." This principle of tariff construction applies to the question before us. The cited case was concerned with the classification of clams that had been cut into pieces, cleaned, cooked, and then packed in the cans filled with a brine, partly salt and partly fresh water, for seasoning and delivery. In reaching its conclusion, the court said:

* * *. Paragraph 721 (b) of the Tariff Act of 1930 provides for "Clams, clam juice, or either in combination with other substances, packed in air-tight containers." It will be observed that this language is not restricted to clams in their raw or natural state, nor is it restricted to entire clams. It includes any clams in any condition, so long as they are clams.

The same reasoning can be applied with equal force in the present case. Here, our consideration is directed to a provision for coca leaves,

paragraph 36, *supra*, without limitation. It is not restricted to fresh coca leaves. The *eo nomine* designation is all embracive, contemplating coca leaves in any condition so long as they are in fact coca leaves.

Publications containing tariff information on the subject lend support to this conclusion. The Summary of Tariff Information (1929) contains the following comment, under the heading "COCA LEAVES":

DESCRIPTION AND USES.—Coca leaves are the product of certain shrubs of the genus *Erythroxylon.* They are used in Europe and North America almost if not wholly for the manufacture of cocaine. They yield about 1.5 per cent alkaloid. *Spent coca leaves are used in making soft drinks.* [Italics ours.] Commerce in coca leaves is now governed by the various restrictions affecting narcotics. The coca plant has nothing in common with the cacao or cocoa tree or products save a confusing similarity of name.

Congress was thereby apprised of the availability and use for coca leaves that have been processed and lost some of their potent and valuable components.

In the Dictionary of Tariff Information (1924) the following appears (p. 138):

Coca leaves are a crude drug used chiefly in the manufacture of cocaine. The Harrison Act, as amended in 1922 by Public Law No. 227, and the war revenue act, provide stringent regulation of traffic in coca leaves. Decocainized coca leaves are used to some extent in the manufacture of soft drinks.

It is true that the above quotation is taken from a publication limiting its references to "commodities mentioned in the Tariff Act of 1922," but it is given importance in this discussion because the provision for coca leaves there, paragraph 36 was indentical with the one in the present tariff act. As a matter of fact, the same *eo nomine* designation was enacted in the Tariff Act of 1909 (paragraph 41) and in the Tariff Act of 1913 (paragraph 39).

The consistent tariff treatment of coca leaves, in the light of technical and statistical data showing different usage for various inherent properties of coca leaves, contributes much to the soundness of our conclusion that the general provision in paragraph 36, *supra*, contemplates, in line with the *Nootka Packing Co.* case, *supra*, coca leaves in whatever form imported.

The protest is overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.