CROSSE & BLACKWELL CO. *v.* UNITED STATES (No. 4584)[1]

[1] C. A. D. 393.

United States Court of Customs and Patent Appeals, November 2, 1948

*Tompkins* & *Tompkins* (*J. Stuart Tompkins* and *Allerton deC. Tompkins* of counsel) for appellant.

*Paul P. Rao*, Assistant Attorney General (*Joseph F. Donohue* and *Sybil Phillips*, special attorneys, of counsel), for the United States.

[Oral argument October 6, 1948, by Mr. Allerton deC. Tompkins and Mr. Donohue]

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

Merchandise, consisting of mangoes in brine, peeled, pitted and sliced, imported from Jamaica, B. W. I., was assessed a duty of 7½ cents per pound by the collector of the port of Baltimore, Maryland, under paragraph 746 of the Tariff Act of 1930, as modified by the trade agreement with Mexico, T. D. 50797. The importers protested said classification, claiming that the merchandise should be classified and assessed with duty at 35% ad valorem under paragraph 752 of said Act, as "Fruits * * * in brine, pickled, * * * or otherwise prepared or preserved, and not specially provided for." This claim is the only one relied on by appellant in this court. The importers have appealed to this court from the judgment of the United States Customs Court, Third Division, rendered in accordance with its decision, C. D. 1055, overruling said protest.

The pertinent provisions of the tariff act insofar as they apply to this case are as follows:

PAR. 746. (as modified by the Mexican Trade Agreement, T. D. 50797)
Mangoes _____ 7½ cents per pound.

PAR. 752. Fruits * * * in brine, pickled * * * or otherwise prepared or preserved, and not specially provided for, * * * 35 per centum ad valorem * * *.

The uncontradicted evidence shows that the merchandise here involved is a variety of mango, known as a turpentine mango; that these turpentine mangoes are prepared by peeling the mango, removing the pits, slicing it, and packing it into barrels, 10 pounds of salt being added to each 50 pounds of sliced mangoes; that when the barrel is filled, the sliced mangoes are covered with a 15 degree brine, which is approximately 15 per cent salt; that the barrel is then stored, with the bung of the barrel open, and that a fermentation takes place, with the result that the brine will come bubbling out of the bung hole, and that each day the brine is replaced, until in about two or three weeks, fermentation ceases, and then the barrel is closed up and the merchandise is ready for shipment; that the brine is added to get a controlled fermentation and thereafter to serve as a preservative; that this

process is a standard pickling method; that the sliced mangoes are used as an ingredient in the manufacture of chutney; that there are about 88 varieties of mango; that the Hayden mango is the finest variety and is edible, but that the turpentine mango is quite fibrous and unpleasant to eat as a fresh fruit and that the taste is disagreeable; that the imported merchandise had an extremely salty flavor; that the price of the shipment was 8 cents per pound 'and that the Hayden mango has sold at from $4 to $4.50 per bushel when the turpentine mango sold at 40 cents per bushel.

The only issue presented here is whether the imported merchandise is dutiable under the *eo nomine* provision for mangoes in paragraph 746, *supra*, as modified by the Mexican Trade Agreement, T. D. 50797, or as fruits in brine under paragraph 752, *supra*.

In *Nootka Packing Co.* v. *United States*, 22 C. C. P. A. (Customs) 464, 470, T. D. 47464, the court stated the general rule that "an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision, or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article."

The rule laid down in the *Nootka* case, *supra*, has been announced on numerous occasions. *Chew Hing Lung* v. *Wise*, 176 U. S. 156; *Neuman & Schwiers Co. et al.* v. *United States*, 4 Ct. Cust. Appls. 64, T. D. 33310; *Brown & Co.* v. *United States*, 6 Ct. Cust. Appls. 415, T. D. 35977; *Mawer Co.* v. *United States*, 7 Ct. Cust. Appls. 493, T. D. 37108; and followed in *Nozaki Bros. et al.* v. *United States*, 71 Treas. Dec. 790, T. D. 48974; *Vanillaproco, Inc.* v. *United States*, 6 Cust. Ct. 441, C. D. 510; *B. Cardinale* v. *United States*, 8 Cust. Ct. 119, C. D. 588; *Centennial Flour Mills Co., et al.* v. *United States*, 29 C. C. P. A. (Customs) 264, C. A. D. 200; *Quong Lee & Co. et al.* v. *United States*, 10 Cust. Ct. 23, C. D. 716; *S. B. Penick & Co., Inc.* v. *United States*, 14 Cust. Ct. 9, C. D. 904; *United States* v. *Nippon Co. et al.*, 32 C. C. P. A. (Customs) 164, C. A. D. 303; *United States* v. *Fung Chong Co.*, 34 C. C. P. A. (Customs) 40, C. A. D. 342.

Appellant contends that the imported merchandise is something different from mangoes; that it is fruit in brine, pickled or otherwise prepared or preserved, and that it is dutiable under paragraph 752, *supra*. In support of that contention appellant cites *Brennan* v. *United States*, (Circuit Court of Appeals, First Circuit), 136 Fed. Rep. 743, T. D. 26317; *Malouf* v. *United States*, 1 Ct. Cust. Appls. 437, T. D. 31502; *Microutsicos* v. *United States*, 2 Ct. Cust. Appls. 342, T. D. 32078; *Stone & Co.* v. *United States*, 7 Ct. Cust. Appls. 173, T. D. 36492; *United States* v. *La Manna, Azema & Farnan et al.*, 14 Ct. Cust. Appls. 123, T. D. 41647; *United States* v. *Pacific Trading Co.*, 14 Ct. Cust. Appls. 131, T. D. 41649; *United States* v. *Sheldon & Co.*, 14 Ct. Cust. Appls. 228, T. D. 41708; *Oreste Franchi* v. *United States*,

56 Treas. Dec. 562, T. D. 43710; and *United States* v. *Wing Chong Lung Co., et al.*, 33 C. C. P. A. (Customs) 36, C. A. D. 312.

We have examined those cases and carefully considered the brief and the supplemental memorandum filed by counsel for appellant. However, all of the above cases are easily distinguishable from the instant case with the exception of *Oreste Franchi* v. *United States, supra.* In that case, small oranges in brine were held to be dutiable as fruits in brine, rather than under the *eo nomine* provision for oranges. However, the decision in that case was not followed in the later cases of *Quong Lee & Co.* v. *United States, supra,* and *Nozaki Bros. et al.* v. *United States, supra,* in which preserved and honeyed kumquats and canned mandarin oranges were held dutiable as oranges.

It is argued by the importer that the merchandise here involved, because it has an unpleasant, bitter and very salty taste, and because it has been put through a fermentation process of pickling, establishes that the character, nature and use of this imported commodity are substantially different from the character, nature and use of fresh mangoes, and is very different from the tropical fruit connoted by the term "mangoes."

Mr. W. L. Kennedy, the only witness produced at the trial, testified as follows:

Q. To what purpose do you put merchandise like Exhibits 1, 2 and 3? (*Samples of the mangoes here involved.*) [Matter in italics ours]—A. They are used as ingredients in the manufacture of chutney.

Q. Do you know of any other use to which it is put than that which you have mentioned?—A. No, sir.

The evidence also shows that the fresh turpentine mango is known as such because in its natural state it has a flavor similar to turpentine; that it has a disagreeable taste; that the imported mangoes have an extremely salty taste. It therefore appears that it is not edible either as a fresh mango or as imported. As far as the evidence in this case discloses, the only use for the turpentine mango is as an ingredient in the manufacture of chutney. The pickling changed the taste from a disagreeable—turpentine—taste to an extremely salty taste, but did not change its character, nature or use. This change in taste did not make it any more or less edible.

Prior to the Tariff Act of 1930, mangoes were dutiable under the general fruit paragraph (749) at 35 per centum ad valorem. The "Summary of Tariff Information, 1929," prepared for the use of Congress in drawing up the Tariff Act of 1930 contains the following statement regarding paragraph 749 (Vol. 1, page 1302):

*Description and uses.*—This paragraph includes a large number of fruits, such as avocados, Chinese longans, guavas, loquats, mangoes, persimmons, kumquats, plantains, cantaloupes, watermelons, and numerous other fruits not specially provided for, as well as many fruit preparations, such as dried lichi, raspberry pulp, and raspberry paste. Avacodos are often called alligator pears.

The Tariff Act of 1930 contains a separate paragraph fixing a duty of 15 cents per pound on mangoes, without any words of limitation.

Following the enactment of the Tariff Act of 1930 and until February 7, 1939, prepared and preserved mangoes were not classified under paragraph 746. On February 7, 1939, under authority of *Nootka Packing Co.* v. *United States, supra,* and *Nozaki Bros. et al.* v. *United States, supra,* it was directed that thereafter collectors were required to classify mangoes, prepared or preserved, under paragraph 746, *supra* (see T. D. 49815 (3)). A trade agreement negotiated with Mexico became effective on January 30, 1942, which reduced the duty on mangoes from 15 cents per pound to 7½ cents per pound. In the "Digest of Trade Data, with Respect to Products On Which Concessions Were Granted By the United States in the Mexican Trade Agreement," is the following statement (pp. 122–123):

Quarantine regulations prohibit the importation of fresh mangoes, because of infestation by various fruit flies. Imports, therefore, consist entirely of mangoes which are canned, frozen, or otherwise prepared. Mangoes canned or preserved formerly entered as fruits "otherwise prepared or preserved, and not specially provided for," dutiable at 35 per cent ad valorem under paragraph 752 of the tariff act, but since April 1939, under Treasury Decision 49815 (3), they have been dutiable, together with other mangoes, at the very much higher rate provided for in paragraph 746.

*Competitive conditions.*—The small imports consist entirely of mangoes canned, frozen, or otherwise prepared, whereas mangoes produced in the United States are virtually all marketed fresh.

Appellant also contends "that if a given imported article, prior to the effective date of a reciprocal trade agreement, has been classified under some paragraph of the law other than the one which the trade agreement modifies, then the terms of such agreement do not affect the classification of the imported article" and cites cases to sustain this view. This argument is not pertinent to the instant case because prior to the effective date of the trade agreement with Mexico, collectors were required to classify mangoes, prepared or preserved, under paragraph 746, *supra.* The trade agreement with Mexico did not in any way change the meaning of paragraph 746, *supra,* other than reduce the duty on mangoes from 15 cents to 7½ cents per pound. It seems clear that at the time the trade agreement with Mexico was negotiated, the reference to mangoes applied to those which had been canned, frozen, or otherwise prepared for the reason that quarantine regulations prohibited the importation of fresh mangoes.

The regulations prohibiting the importation of fresh mangoes were in effect at the time the Tariff Act of 1930 was passed and became law. Congress is presumed to have knowledge of quarantine orders which are published as Treasury Decisions and to have acted with this information in mind. Therefore it must be assumed that Congress, in passing paragraph 746, *supra,* intended to cover all forms of mangoes which could be imported.

Appellant also contends that the duty under paragraph 746, *supra*, amounts to 74 per cent of the value of the importation and that this does not harmonize with the congressional intent. This argument cannot have weight because it is clear that mangoes imported fresh, turpentine mangoes as well as all of the 88 varieties, would require the same rate of duty.

It seems clear to us that the merchandise imported in the instant case is recognizable as mangoes. The *pro forma* invoice covers "175 barrels of mangoes." The consumption entry describes the merchandise as "mangoes in brine." Nothing has been presented to show that Congress intended to except from paragraph 746, *supra*, turpentine mangoes or mangoes in brine. The mangoes were sliced and pickled in brine, but they are nevertheless mangoes and are easily recognizable as mangoes.

Paragraph 746, *supra*, fixes the duty on "mangoes." This language is not restricted to any particular variety of mango, or to fresh mangoes, or to entire mangoes. It includes mangoes in any condition, so long as they are mangoes. In *Smillie & Co.* v. *United States*, 11 Ct. Cust. Appls. 199, 201, T. D. 38966, it was held that "where a dutiable provision names an article without terms of limitation all forms of the article are thereby included unless a contrary legislative intent otherwise appears." To the same effect is *Tower & Sons et al.* v. *United States*, 11 Ct. Cust. Appls. 157, 162, T. D. 38948, and *Schade & Co.* v. *United States*, 5 Ct. Cust. Appls. 465, T. D. 35002. The peeling, pitting, slicing, and pickling and preserving of the mangoes in brine does not remove them from the designation of mangoes. See *Neuman & Schwiers Co. et al.* v. *United States, supra; Brown & Co.* v. *United States, supra.*

Appellant has failed to establish any intent to limit the *eo nomine* provision contained in paragraph 746, *supra*, and we hold that the imported merchandise is properly dutiable under that paragraph, as modified by the trade agreement with Mexico, *supra*. The imported merchandise is "mangoes" and should be classified as such.

The judgment of the United States Customs Court is *affirmed.*